(No. 65761.—

NATIONAL BANK OF MONTICELLO *et al.*, Appellees,
v. FRANK M. QUINN, Appellant.

*Opinion filed December 15, 1988.—Rehearing denied
January 30, 1989.*

William J. McKenna, Jr., and David B. Goroff, of Hopkins & Sutter, of Chicago, for appellant.

James P. Ginzkey and Kevin P. Jacobs, of Costigan & Wollrab, P.C., of Bloomington, for appellees.

JUSTICE CLARK delivered the opinion of the court:

This commercial law case presents for the court's review a question centered on an interpretation of the terms "properly payable" and "authorized" found in this

State's codification of the Uniform Commercial Code (Ill. Rev. Stat. 1985, ch. 26, par. 1—101 *et seq.*). Specifically at issue here is a determination of the scope of the drawee bank's responsibility to its customer under the provisions of section 4—401(1): "As against its customer, a bank may charge against his account any item which is otherwise properly payable from that account even though the charge creates an overdraft." Ill. Rev. Stat. 1985, ch. 26, par. 4—401(1).

Appellant, as drawer of a check, had sought to have his account recredited for a check which National Bank of Monticello (National) had paid and which, he asserted, was not "properly payable." The appellate court held that under the provisions of the Code, the trial court of Piatt County should have granted National's motion for summary judgment; it therefore reversed the trial court's finding for appellant. (158 Ill. App. 3d 694.) In reaching its conclusion, the appellate court relied primarily on the signature card of the intended payee on file with the collecting bank as well as on section 9 of the fiduciaries act (Ill. Rev. Stat. 1983, ch. 17, par. 2009) to determine the scope of the drawee bank's liability following an assertion that an item was not properly payable. For the reasons stated herein, we reverse the decision of the appellate court.

In March 1985, Frank Quinn made demand upon National to recredit his account $30,000 for a check drawn on June 15, 1984, payable to Limetree Beach Associates, Ltd. (Limetree Beach). The check was issued for the purpose of making a purchase into an investment partnership being formed by Dan L. Wey (Wey). Quinn had determined, after talking with co-workers and reading the offering memorandum for the Limetree limited partnership and the limited partnership agreement, that he wanted to make an investment in that venture. Appel-

lant personally delivered his check payable to the partnership to Wey.

Quinn now alleges that the check is not "properly payable" because Wey indorsed the reverse side of the check directing deposit into Wey's personal business account rather than into the Limetree Beach account. Wey's indorsement on the back of the check read: "Deposit 049 580." There is no dispute among any of the parties that Wey wrote the word "deposit" and the numbers on the back of the check.

Wey was the sole individual general partner of the Limetree Beech limited partnership and the person to whom appellant personally delivered the $30,000 check. He maintained the partnership account and a personal business account at the same bank. Both the Limetree Beach account and Wey's personal business account were at Marine American State Bank, f/k/a American State Bank of Bloomington (American State). Wey was one of two authorized signatories on each of the two noted accounts at American State. Because Wey was an authorized signatory on the Limetree account, American State accepted Wey's indorsement of appellant's check for deposit into the personal account and stamped the check with its own guarantee of prior indorsements.

Through his attorneys, Quinn made demand for recredit to his account in March 1985. National refused to recredit Quinn's account and, instead, initiated a two-count action seeking declaratory relief. National sought a determination of whether it owed Quinn a duty to recredit his account and, if it did owe Quinn such a duty, an order requiring American State to compensate National. Appellant filed a counterclaim against National seeking an order to compel National to recredit his account in the amount of $30,000 plus interest. National responded by filing a third-party complaint against American State

for reimbursement of any amounts due to appellant. American State answered by denying liability.

All parties moved for summary judgment: appellant against National, and National and American State against appellant. The trial court granted appellant's motion, ruling that Wey's indorsement was invalid because he exceeded his authority as delineated in the offering memorandum for the limited partnership and in the limited partnership agreement. Because he exceeded his authority, the court held, the indorsement was invalid. Both banks appealed.

The appellate court reversed, finding that because Wey was the listed signatory on the signature card on file with American State he was authorized to indorse the check. The court reasoned that the trial court had erred in looking to such extraneous documents as the partnership agreement and the offering memorandum. The signature card, the court stated, was evidence of the contract between American State and Wey; American State had acted within the bounds of that contract and was therefore not liable on the check. American State, and through it, National, could rely, the court held, on the signature card held by American State to establish Wey's authority. Thus the check was "properly payable." As additional support, the appellate court noted that the fiduciaries act limited the liability of the bank for the actions of one who is a fiduciary.

Appellant petitioned for appeal to our court pursuant to Rule 315 (107 Ill. 2d R. 315), which petition was granted, and raised the following questions for our review: (1) whether the courts may deny consideration of parol evidence in determining the extent of the authority of an agent to indorse a check and instead rely solely on the signature card in the possession of the bank; (2) whether Wey's indorsement of the check to his personal account was in fact authorized; (3) whether the fiducia-

ries act is to be applied to a bank that has no direct contact with the fiduciary; and (4) whether the appellate court's decision creates a conflict between the Uniform Commercial Code and the fiduciaries act by allowing a payor bank to debit its depositor's account for an item that purportedly was not "properly payable."

We need not answer each question individually because, in essence, our court is being asked to determine the boundaries of the duty owed by a drawee bank to its customer in determining whether a check is "properly payable." By what standard may a bank assess whether an item is properly payable?

Appellant's claim before our court for a recredit to his account is based on section 4—401 (Ill. Rev. Stat. 1985, ch. 26, par. 4—401), asserting that the check was not "properly payable." Appellant contends that by exceeding his authority to indorse the check, Wey's indorsement was unauthorized. Under the Code, appellant further contends, an unauthorized signature is equivalent to a forged signature (Ill. Rev. Stat. 1985, ch. 26, par. 1—201(43)) and as such the drawee bank may not properly charge his account. Support for a showing that Wey exceeded his authority, appellant alleges, is found in the partnership agreement and the offering memorandum. While the trial court resorted to use of these documents, the appellate court confined its review to the signature card on file at American State. No question is raised on the authenticity of Wey's indorsement; that is, there is no question of actual forgery. Instead, appellant rests his claim solely on the unauthorized nature of Wey's signature.

As our court has previously held, and as appellant cites, the relationship between a drawer and a drawee is a contractual one. The terms of this contract create a debtor and creditor relationship; moreover,

"the law implies the contract on the part of the bank to pay the depositor's checks, to the amount of his deposit, to the persons to whom he orders payment to be made. If the check is made payable to the order of a person named, the duty of the bank is absolute to pay only to the payee or according to his order." (*United States Cold Storage Co. v. Central Manufacturing District Bank* (1931), 343 Ill. 503, 513.)

Also, as appellant notes, our court stated in *Cosmopolitan State Bank v. Lake Shore Trust & Savings Bank* (1931), 343 Ill. 347, that a drawee bank is "bound to pay the amount of the check of the drawer to the payee or to its order, and to no other person." (343 Ill. at 350.) In noting that the drawee's duty toward the drawer is absolute, the court stated that:

"[t]he general rule is well settled that the obligation of a bank is to pay, on demand, the funds of the depositor to the payee named in each check, or to his order or to bearer, as the check may direct, and it must ascertain at its peril the identity of the payee and the genuineness of the indorsements, though each indorsement is a guaranty of all prior indorsements." (343 Ill. at 351-52.)

While the factual background of each of these two cases, *Cosmopolitan* and *United States Cold Storage Co.*, distinguishes it from the case before us, and while the cases also predate the passage of the Uniform Commercial Code, the undergirding principles found in each are indeed applicable to our decision. Additionally, the negotiable instruments law under which the decisions were rendered is embodied in the current code.

*Cosmopolitan* is an unauthorized-indorsement case which involved a suit between the drawee bank and the collecting bank. The drawee bank had already recredited its customer's account and was seeking reimbursement from the collecting bank. The check in question was for the drawer's purchase of an automobile. Because Anderson, the drawer of the check, wanted a particular type of

auto, a friend who was a dealer took him to an automobile supplier so that he could select a specific car. The dealer later called and informed Anderson that he wanted to pick up the auto from the supplier and needed Anderson's payment. Anderson made his check payable to the automobile supplier rather than to the dealer and delivered the check to the dealer. However, the dealer, unbeknown to Anderson, already had possession of and had paid for the automobile. He had not communicated this information to Anderson; he simply took the check, even though it was payable to the supplier. The dealer then indorsed the check with the name of the automobile company and absconded with both the proceeds of the check and the automobile. Neither Anderson (the drawer of the check) nor the dealer owed any money to the automobile supply company at this point in time. When Anderson's bank sued the collecting bank for reimbursement of the funds, the court admitted the testimony of the automobile supply company's manager. The manager indicated that the dealer had no authority to indorse checks for the company nor had he received special authority to indorse this particular check.

While in *Cosmopolitan* it was clear that the dealer had no relationship to or authority from the automobile supplier to indorse the check, the instant case does not provide such a clear-cut distinction of lack of authority since Wey was the sole general partner of Limetree. However, the contractual relationship between the drawer and the drawee places heavy burdens on the drawee to follow only the directions of the drawer. What information may the drawee bank rely on when the drawer makes a claim that the check was not properly paid? Once a drawer alleges under section 4—401(1) that a check was not properly payable, what information may defeat a drawee's refusal to recredit an account? In finding that liability lies with the collecting bank, the *Cosmo-*

*politan* court answers these questions through its reliance on the statements of the supply company manager. The supply company had never seen Anderson's check, nor had it given the dealer authority to sign the check in its stead. Our court noted that "[t]he [drawee] bank cannot settle equities among the various indorsers, the payee and the drawer of a check and third parties, strangers to the instrument, but its only authority, where the check is payable to the order of the payee, is to pay it on such order according to its terms." *Cosmopolitan State Bank,* 343 Ill. at 352.

Is the indorsement of a general partner who is a listed signatory on the partnership's bank signature card without more sufficient to establish an authority to deal with a check in any manner he so chooses? We answer that question in the negative.

Like the case before this court, *United States Cold Storage Co. v. Central Manufacturing District Bank* (1931), 343 Ill. 503, involved a suit brought by the depositor against its drawee bank. *United States Cold Storage* was based on a forged-indorsement claim in which the drawee bank attempted to deny liability based on the fraudulent conduct of the depositor's own employee who drafted checks based on fictitious invoices, forged the indorsement of the named payee, and used the funds for his own purposes. Our court noted:

> "The questions arising upon checks between the drawee and the drawer 'always relate to what the one has authorized the other to do. They are not questions of negligence or of liability of parties on commercial paper but are those of authority, solely.' " 343 Ill. at 513.

A more recent case to address the question of "properly payable" under section 4—401 is *Kosic v. Marine Midland Bank* (1980), 76 A.D.2d 89, 430 N.Y.S.2d 175, on which appellant urges this court to rely and which, he argues, is directly on point. We agree. *Kosic* involves a

suit brought under section 4—401 by a depositor against his bank alleging that two cashier's checks were not "properly payable."

The depositor-drawer in *Kosic* had agreed with a co-venturer to form a corporation for the purpose of purchasing a restaurant. He drew two checks payable to the corporation pursuant to an escrow agreement with his co-venturer, Ferry. Their agreement called for the funds to be held in an escrow account at Central Trust Company. However, upon receiving the checks, Ferry proceeded to First National Bank, where she opened a personal savings account and a corporate checking account. In opening the corporate account she signed a temporary signature card as president of the corporation; the bank gave her permanent signature cards and corporate resolutions to be completed and returned. The checks payable to the corporation were indorsed on the back with only her name and deposited into her personal account. Needless to say, the bank never received the permanent signature cards or the corporate resolution, the corporation was never formed, and the funds were ultimately nearly depleted. The court held:

> "Because the two cashier's checks did not bear the indorsement of the payee, Captain Blake's, Inc., Marine breached a duty owed to its customer in charging against his account items which were not 'properly payable' [citations]. 'The drawee bank stands in a debtor-creditor relationship to its customer and may make payment on checks drawn against its customer's account only as directed by the latter [citations].' " 76 A.D.2d at 91-92, 430 N.Y.S.2d at 177.

Similarly, the case before us involves a check given by one partner to another for a specific purpose—here, the purpose was to eventually secure and operate a resort property. The funds were never deposited, however, in the Limetree account, nor was the check ever indorsed

in the name of Limetree. Central to the contract between the drawee bank and the drawer is the obligation of the bank to follow only the orders of its customer. While we acknowledge that Wey would have been the person to effectuate a deposit into the Limetree account, Wey's failure to indorse the check in a manner which indicated the named payee, followed by deposit into his personal account, is fatal to the bank's denial of liability.

Our review has found no Illinois case exactly on point based on a drawer's claim under section 4—401(1). We find, however, that *Kosic* offers guidance and defines what the drawer of a check has a right to expect prior to disbursement of funds. We find that when a check is made payable to order rather than to bearer, the drawer has the right to expect that the named payee has indorsed the check and thereby directs further negotiation or, in the alternative, that the funds have been deposited only in the account of the named payee. Failing this, the drawer may succeed in a section 4—401(1) claim.

Because we reverse for the reasons stated, it is not necessary to address appellant's other contentions. Appellate court judgment reversed; circuit court affirmed.

*Appellate court reversed;*
*circuit court affirmed.*