MASTER CHEMICAL CORPORATION ET AL., APPELLANTS AND CROSS-APPELLEES, *v.* INKROTT; TRUSTCORP BANK, F.K.A. TOLEDO TRUST COMPANY, APPELLEE AND CROSS-APPELLANT.

[Cite as Master Chemical Corp. *v.* Inkrott (1990),
55 Ohio St. 3d 23.]

(No. 89-329—Submitted February 21, 1990—Decided November 14, 1990.)

24

strenuously argued the application and merits of the Uniform Commercial Code ("UCC") to the facts of this case.

We agree with the appellate court's analysis of the application of the UCC to the present case. The appellate court stated:

"* * * [W]e find that the three checks written by Inkrott and payable to Toledo Trust were, as a matter of law, not properly payable in that Toledo Trust did not pay the proceeds to the named payee, but instead deposited the funds into the H.Y. account at the request of Larry Inkrott but with no authority from Master Chemical Corporation. In this situation, the bank had the duty to find out, from Master Chemical Corporation, what the corporation wanted the bank to do with the proceeds of the checks. This follows from the fact that the proceeds were clearly not intended to benefit Toledo Trust, the named payee, since Master Chemical Corporation did not owe Toledo Trust $1,415,000."

The appellate court then proceeded to rely on paragraph three of the document titled "Certified Copy of Resolutions adopted by Board of Directors of Master Chemical Corporation" (hereinafter "Resolutions") and UCC 4-103, R.C. 1304.03, in determining that the corporation had contractually altered the bank's obligations under the UCC.

Paragraph three of the Resolutions states:

"Said depository of the funds of this Corporation is hereby authorized to pay such checks, drafts, notes or orders and also to receive the same for the credit of or in payment from the payee or any other holder, when so signed, without inquiry as to the circumstances of their issue or the disposition of their proceeds whether drawn to the individual order of or

*Eastman & Smith, Ralph S. Boggs, John H. Boggs, Roger Paul Klee, Stein, Mitchell & Mezines, Glenn A. Mitchell, Jacob A. Stein, Manahan, Pietrykowski & Bamman* and *William Pietrykowski,* for appellants and cross-appellees.

*Shumaker, Loop & Kendrick, David W. Wicklund* and *John N. MacKay,* for appellee and cross-appellant.

BRYANT, J. The parties on appeal have submitted several propositions of law with respect to whether Toledo Trust breached the legal obligations it owed to its depositor, Master Chemical. Primarily, the parties have

tendered in payment of individual obligations of the said above named officers or other authorized persons of this corporation or otherwise, * * *."

R.C. 1304.03(A) states:

"The effect of the provision of sections 1304.01 to 1304.34, inclusive, of the Revised Code, may be varied by agreement except that no agreement can disclaim a bank's responsibility for its own lack of good faith or failure to exercise ordinary care or can limit the measure of damages for such lack or failure; but the parties may by agreement determine the standards by which such responsibility is to be measured if such standards are not manifestly unreasonable."

It is at this point in the appellate court's decision that we must disagree. Paragraph three of the Resolutions cannot be construed to encompass the present situation where the check is drawn to the order of a bank to which the drawer is not indebted. Here, the bank is authorized to pay the funds only to those persons specified by the drawer. Paragraph three of the Resolutions attempts to negate the bank's responsibilities to its customer in derogation of UCC 4-103.

Contractually the bank cannot absolve itself from responsibility to act in good faith and exercise ordinary care. R.C. 1304.03(A) specifically states that "no agreement can disclaim a bank's responsibility for its own lack of good faith or failure to exercise ordinary care." "Good faith" is defined in UCC 1-201(19), R.C. 1301.01(S), as "honesty in fact in the conduct or transaction concerned." "Ordinary care" is not defined in the UCC; however, R.C. 1304.03(C), UCC 4-103(3), states instances in which collecting banks must exercise ordinary care.[1]

In applying the common law, courts across the country have found uniformly that when a check is drawn to the order of a bank, the drawer has indicated his intention to place the funds in the bank's custody. Annotation, Liability of Bank for Diversion to Benefit of Presenter or Third Party of Proceeds of Check Drawn to Bank's Order by Drawer not Indebted to Bank (1989), 69 A.L.R. 4th 778, 801. The bank is not entitled to treat the checks as bearer paper. (See UCC 3-110 and 3-111.) Once the payee bank accepts custody and control of the funds, it can justify dispensing the funds only in compliance with the instructions of the drawer. Annotation, *supra*, at 802. If the payee bank assumes, without investigation, that the instructions of the presenter are those of the drawer, the payee bank does so at the risk of discovering that no such directions were given by the drawer. The payee bank becomes liable for the misdirected funds.[2]

---

[1] R.C. 1304.03(C) provides:

"Action or non-action approved by sections 1304.01 to 1304.34, inclusive, of the Revised Code, or pursuant to Federal Reserve regulations or operating letters constitutes the exercise of ordinary care and, in the absence of special instructions, action or non-action consistent with clearing house rules and the like or with a general banking usage not disapproved by sections 1304.01 to 1303.34, inclusive, of the Revised Code, prima facie constitutes the exercise of ordinary care."

[2] See *Bank of Southern Maryland* v. *Robertson's Crab House, Inc.* (1978), 39 Md. App. 707, 389 A. 2d 388; *Bullitt Cty. Bank* v. *Publishers Printing Co., Inc.* (Ky. App. 1984), 684 S.W. 2d 289; *PWA Farms, Inc.* v. *North Platte State Bank* (1985), 220 Neb. 516, 371 N.W. 2d 102; *Allis Chalmers Leasing Services Corp.* v. *Byron Center State Bank* (1983), 129 Mich. App. 602, 341 N.W. 2d 837; *Pacific Indemnity Co.* v. *Security First Natl. Bank* (1967), 248 Cal. App. 2d 75, 56 Cal. Rptr. 142; *Mayo Bros. Chemical Corp.* v. *Capital Natl. Bank in Jackson* (1941), 192 Miss. 293, 5 So. 2d 220.

We conclude from a review of the issues in this case that not all the applicable law in Ohio has been presented. In addition to the adoption of the Uniform Commercial Code, the adoption of the Uniform Fiduciaries Act in Ohio modifies the common law. The Uniform Fiduciaries Act provides a defense, when asserted under Civ. R. 8(C), for those who knowingly deal in good faith with an authorized fiduciary. Although this defense was not presented by Toledo Trust or rebutted by Master Chemical, we believe that it is necessary to address the application of the Uniform Fiduciaries Act in order to completely resolve the issues presented by this case.

Since its creation in 1922, the Uniform Fiduciaries Act has been adopted in twenty-three states, the District of Columbia and the Virgin Islands.[3] Several of these states have been faced with a factual situation such as the one before us. We have extensively reviewed the cases and the various courts' analyses and have derived the following conclusions.

The Uniform Fiduciaries Act was developed to facilitate commercial transactions, by relieving those who deal with authorized fiduciaries from the duty of ensuring that entrusted funds are properly utilized for the benefit of the principal by the fiduciary. *Zions First Natl. Bank* v. *Clark Clinic Corp.* (Utah 1988), 762 P. 2d 1090, 1100. By altering the common law, the Act relaxes " 'some of the harsher rules which require of a bank and of individuals the highest degree of vigilance in the detection of a fiduciary's wrongdoing.'* * *'' (Citations omitted.) *Trenton Trust Co.* v. *Western Sur. Co.* (Mo. 1980), 599 S.W. 2d 481, 490. See *Johnson* v. *Citizens Natl. Bank of Decatur* (1975), 30 Ill. App. 3d 1066, 1070, 334 N.E. 2d 295, 298. "* * * [T]he Act provides relief for many who deal with authorized fiduciaries except where they know the fiduciary is breaching his or her duty to the principal involved or where they have knowledge of such facts that their action in dealing with the fiduciary amounts to bad faith." *Zions, supra,* at 1100. See, also, *Maryland Cas. Co.* v. *Bank of Charlotte* (C.A. 4, 1965), 340 F. 2d 550, 553; *Appley* v. *West* (C.A. 7, 1987), 832 F. 2d 1021, 1031.

Selected sections of the Ohio Uniform Fiduciary Act provide:

" 'Fiduciary' includes a trustee under any trust, expressed, implied, resulting, or constructive, an executor, administrator, guardian, conservator, curator, receiver, trustee in bankruptcy, assignee for the benefit of creditors, partner, agent, officer of a corporation, public or private, public officer, or any other person acting in a fiduciary capacity for any person, trust, or estate." R.C. 1339.03(B).

"A person who in good faith pays or transfers to a fiduciary any money or other property which the fiduciary as such is authorized to receive is not responsible for the proper application thereof by the fiduciary. Any right or title acquired from the fiduciary in consideration of such payment or transfer is not invalid because of a misapplication by the fiduciary." R.C. 1339.04.

"If a check is drawn upon his principal's account by a fiduciary who is empowered to do so, the bank may pay such check without being liable to the principal, unless the bank pays the

---

[3] Alabama, Arizona, Colorado, Hawaii, Idaho, Illinois, Indiana, Louisiana, Maryland, Minnesota, Missouri, Nevada, New Jersey, New York, North Carolina, Ohio, Pennsylvania, Rhode Island, South Dakota, Tennessee, Utah, Wisconsin and Wyoming.

check with actual knowledge that the fiduciary is committing a breach of his obligation as fiduciary in drawing such check or with knowledge of such facts that its action in paying the check amounts to bad faith.

"If such a check is payable to the drawee bank and is delivered to it in payment of or as security for a personal debt of the fiduciary to it, the bank is liable to the principal if the fiduciary in fact commits a breach of his obligation as fiduciary in drawing or delivering the check." R.C. 1339.09.

In paragraph two of the Resolutions, Larry Inkrott is listed as an officer of the corporation. An officer of a corporation is a "fiduciary" within the definition of that term in R.C. 1339.03(B).

The Uniform Fiduciaries Act shields a bank from liability when the bank knows that the individual is acting for the benefit of another. The inquiry to be made is not only whether the bank had knowledge of the existence of the fiduciary relationship but also whether the fiduciary in fact possessed the authority to conduct the transaction in question. *Zions, supra,* at 1101. This test is consistent with the purposes of the Act to protect those who honestly deal with another knowing him to be a fiduciary and to place the responsibility of employing honest fiduciaries on the principal. *Johnson, supra,* at 1069-1070, 334 N.E. 2d at 298; *Boutros* v. *Riggs Natl. Bank* (C.A.D.C. 1981), 655 F. 2d 1257, 1259.

In the same paragraph of the Resolutions where Inkrott is listed as an officer of a corporation, he is given authority to withdraw funds and sign checks. Paragraph two of the Resolutions states:

"Until otherwise ordered, the said funds shall be subject to be withdrawn on the checks, drafts, notes or orders of this Corporation signed by a combination of any two (2) of the following officers of this corporation, except the combination of Ronald L. Sladky and Larry Inkrott, namely:

Clyde A. Sluhan
Marian E. Sluhan
William A. Sluhan
Joe H. Wright
Ralph S. Boggs
Ronald L. Sladky
Larry Inkrott."

Toledo Trust knew Larry Inkrott to be a fiduciary of Master Chemical Corporation by these resolutions. Inkrott was empowered by the company to receive funds and to cosign checks in the proper combination with other designated officers. The evidence presented at trial indicates that each of the checks was properly signed and was properly payable. The evidence affirmatively establishes the bank's knowledge of Larry Inkrott's fiduciary relationship with Master Chemical and Inkrott's authority to conduct the transactions leading to embezzlement. See *Boutros, supra,* at 1259; see, also, *Smith* v. *Halverson* (S.D. 1978), 273 N.W. 2d 146, 151 (dissenting opinion); and *Arvada Hardwood Floor Co.* v. *James* (Colo. App. 1981), 638 P. 2d 828, 830.

In a case such as this where the bank presents the defense that it dealt with an individual knowing him to be a fiduciary, in order for the company to successfully maintain a cause of action, it must show that the bank had actual knowledge of the fiduciary's breach of the fiduciary obligation, or that the bank had knowledge of such facts that its actions in paying the checks amounted to bad faith, or that the fiduciary was indebted to the bank and the funds were applied to that indebtedness. R.C. 1339.09. See, also, *St. Stephen's Evangelical Lutheran Church* v. *Seaway Natl. Bank* (1976), 38 Ill. App. 3d 1021, 1023, 350 N.E. 2d

128, 129-130; *General Ins. Co. of America* v. *Commerce Bank of St. Charles* (Mo. App. 1974), 505 S.W. 2d 454, 456-457.

"Actual knowledge" has been defined as awareness at the moment of the transaction that the fiduciary is defrauding the principal. "It means express factual information that the funds are being used for private purposes in violation of fiduciary relationship." *General Ins. Co., supra,* at 457.

"Bad faith" is not defined by the Ohio Uniform Fiduciary Act or the Uniform Commercial Code. "Good faith" is defined in R.C. 1339.03(E) as "an act when it is in fact done honestly." This is virtually identical to the UCC 1-201(19) definition of "good faith": "Honest in fact in the conduct or transaction concerned." "In determining whether the bank acted with bad faith, 'courts have asked whether it was "commercially" unjustifiable for the payee to disregard and refuse to learn facts readily available.' * * *'" (Citation omitted.) *Appley, supra,* at 1031. "The facts and circumstances must be so cogent and obvious that to remain passive would amount to a deliberate desire to evade knowledge because of a belief or fear that inquiry would disclose a defect in the transaction." *General Ins. Co., supra,* at 458 (citing *Transport Trucking Co.* v. *First Natl. Bank in Albuquerque* [1956], 61 N.M. 320, 325, 300 P. 2d 476, 479). "Bad faith" has also been defined as "that which imports a dishonest purpose and implies wrongdoing or some motive of self-interest." *Smith, supra,* at 150-151 (citing *National Cas. Co.* v. *Caswell & Co.* [1942], 317 Ill. App. 66, 45 N.E. 2d 698).

The funds embezzled by Inkrott were not applied to any debt owed by Inkrott to the bank nor do the facts disclose that Toledo Trust had actual knowledge at the time of the transaction that Inkrott was defrauding Master Chemical. However, Toledo Trust in this case established a procedure where a transfer from one corporate account to another would be presumed correct and would not be questioned. In an age of white-collar crime, it is more than negligent for a bank to make such a presumption in the development of its policies when dealing with fiduciaries presenting checks payable to the bank. Evidence was presented that had Inkrott attempted to deposit the funds into his personal account the checks would have been scrutinized more closely. The bank by its policies and presumptions lent itself to Inkrott's embezzlement.

We held in *G.F.D. Enterprises, Inc.* v. *Nye* (1988), 37 Ohio St. 3d 205, 213, 525 N.E. 2d 10, 18, that treating an instrument such as the one in this case as bearer paper, "whether negligent or not, does not, without more, constitute bad faith." Toledo Trust claims that to institute changes requiring closer scrutiny of transactions involving deposits made to corporate accounts using checks payable to the bank would drastically increase the cost of the transactions. We believe that it is commercially unjustifiable for Toledo Trust to institute a procedure permitting this type of theft to occur. Toledo Trust has attempted to contract away its bad-faith liability for creating a procedure designed to promote its own self-interest in derogation of the Uniform Commercial Code and beyond the protections provided by the Uniform Fiduciaries Act.

For the reasons stated above, the judgment of the court of appeals is reversed and final judgment is entered for Master Chemical.

*Judgment reversed.*

MOYER, C.J., SWEENEY, DOUG-LAS, WRIGHT and H. BROWN, JJ., concur.

HOLMES, J., concurs in judgment only.

THOMAS F. BRYANT, J., of the Third Appellate District, sitting for RESNICK, J.

HOLMES, J., concurring in judgment only.

Although I concur in the judgment which imposes liability upon Toledo Trust, I must dissent from the majority's legal analysis in reaching its result. I believe the proper analysis of the facts in the case *sub judice* requires an application of the Ohio Uniform Commercial Code and general contract principles.

It is well-settled in Ohio law that the relationship between a bank and its customer, as debtor and creditor, is grounded upon a contractual undertaking. *Cincinnati Ins. Co.* v. *First Natl. Bank* (1980), 63 Ohio St. 2d 220, 17 O.O. 3d 136, 407 N.E. 2d 519, citing *Speroff* v. *First Central Trust Co.* (1948), 149 Ohio St. 415, 37 O.O. 98, 79 N.E. 2d 119. According to this contractual relationship, a bank may charge against its customer's account only those items which are "properly payable." R.C. 1304.24(A) (UCC 4-401).[4] If a bank pays an item which is not "properly payable," the bank is required to credit the customer's account in the amount of the item. *Cincinnati Ins. Co.* v. *First Natl. Bank, supra.* In holding these payor banks liable, courts have reasoned that sound commercial practice requires the loss of

paying on a forged or altered item to be placed upon the first taker from the wrongdoer even if that taker exercised the highest degree of care in the transaction. See Whaley, Negligence and Negotiable Instruments (1974), 53 N.C.L. Rev. 1; McDonnell, Bank Liability for Fraudulent Checks: The Clash of the Utilitarian and Paternalist Creeds Under the Uniform Commercial Code (1985), 73 Geo. L.J. 1399.

As the facts in the instant case indicate, appellant Master Chemical employed Inkrott as a controller. Pursuant to his responsibilities as controller, Inkrott was required to pay Master Chemical's federal tax liabilities by depositing Master Chemical's funds in a designated Toledo Trust account. However, on three separate occasions, Inkrott exceeded the scope of his authority as controller and deposited the tax liability checks into his "H.Y. Investment Fund" account at Toledo Trust.

In *National Bank of Monticello* v. *Quinn* (1988), 126 Ill. 2d 129, 533 N.E. 2d 846, the Illinois Supreme Court was faced with a similar fact situation. In *Quinn,* a drawer issued a check for the specific purpose of investing in a limited partnership. The general partner upon receiving the check endorsed it outside the scope of his authority and placed it in his own personal account. In holding the depository bank liable for improperly paying the item, the *Quinn* court reasoned that "* * * when a check is made payable to order rather than to bearer, the drawer has the right to expect that the named payee has endorsed the check and thereby directs further negotiation or, in the alternative, that the funds have

---

[4] R.C. 1304.24(A) provides:

"As against its customer, a bank may charge against his account any item which is otherwise properly payable from that account even though the charge creates an overdraft."

been deposited only in the account of the named payee." *Quinn, supra,* at 139, 533 N.E. 2d at 851.

Similarly, Master Chemical, in the instant case, made its checks payable to the order of Toledo Trust for the specific purpose of paying its tax liability. Accordingly, Master Chemical expected payment from its account to be applied for that purpose only. Unfortunately, Toledo Trust failed to meet Master Chemical's expectations by negligently permitting Inkrott to deposit the tax liability checks into an account established for Inkrott's personal benefit. In so doing, Toledo Trust breached its contract with Master Chemical to pay only "properly payable" items. Accordingly, Toledo Trust is liable to credit Master Chemical's account pursuant to R.C. 1304.24(A).