OPINION
Defendants-appellants, National City Bank, N.E., et al., appeal from a judgment rendered by the Mahoning County Common Pleas Court, Probate Division, finding them liable for wrongfully concealing and conveying away the funds of a guardianship account established for plaintiffs-appellees, the guardianship of Darrell Clark, et al. For the following reasons, the judgment of the trial court is reversed in part and modified.
 STATEMENT OF THE FACTS
On or about August 15, 1995, the Mahoning County Probate Court appointed Annette Dendy as the guardian of the estate of Darrell Clark. Clark's mother was killed as the victim of a crime, and Clark was awarded $47,500 from the Victims of Crime Fund. Although a judgment entry from the probate court ordered Ms. Dendy to deposit the funds in a guardianship account at Mahoning National Bank, Ms. Dendy took the check to National City Bank to open a guardianship account in the name of Clark. Upon arriving at National City Bank, Ms. Dendy met with Marybeth Phillips, the branch manager of National City Bank. Ms. Dendy presented Ms. Phillips with an order directing payment of judgment in favor of Clark from the Court of Claims of Ohio, Victims of Crime Division. Ms. Dendy also presented Ms. Phillips with a check in the amount of $47,500 from the Victims of Crime Fund. Upon opening the guardianship account, Ms. Dendy deposited only $42,000, cashing out $5,500.
Over a period of time, Ms. Dendy withdrew money from the guardianship account and used it to pay family bills, to remodel the basement and for other various expenses. Ms. Dendy also co-mingled personal funds in the guardianship account. At the end of a nine month period, Ms. Dendy depleted all but $946.19 from the guardianship account.
Ms. Dendy was subsequently removed as guardian, and the probate court appointed Attorney Andrew Bresko as successor guardian. Both Attorney Bresko, who was acting on behalf of the estate of Clark, and Ohio Farmers Insurance, which was the surety on Ms. Dendy's $20,000 bond (hereinafter referred to collectively as appellees) filed suit against Ms. Dendy and National City Bank. Appellees' claims were for wrongfully converting and embezzling the funds from the guardianship account. After hearing evidence, the trial court adopted appellees' proposed judgment entry, nuncpro tunc to April 16, 1999. The trial court found that National City Bank proximately caused seventy-five percent of the damages, and that Ms. Dendy proximately caused twenty-five percent of the damages. The trial court further held that appellants were jointly and severally liable, and ordered them to pay $30,344 plus interest and the ten percent statutory penalty to Clark's guardianship estate, and $20,000 plus interest to Ohio Farmers Insurance Company. This appeal followed.
 NATIONAL CITY BANK AND MS. DENDY'S FIRST ASSIGNMENT OF ERROR
Appellant National City Bank sets forth two assignments of error on appeal. Appellant Ms. Dendy sets forth four assignments of error on appeal. Since both of appellants' first assignments of error have a common basis in law and fact, they will be discussed together and respectively allege:
 "THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT NATIONAL CITY IN FINDING, AGAINST THE WEIGHT OF THE EVIDENCE, THAT SAID APPELLANT CONCEALED, EMBEZZLED AND/OR CONVEYED AWAY ASSETS OF THE WARD'S ESTATE."
 "THE PROBATE COURT ERRED WHEN IT FOUND APPELLANT ANNETTE DENDY GUILTY OF HAVING CONCEALED, EMBEZZLED, AND/OR CONVEYED AWAY THE PROPERTY OF THE ESTATE OF DARRELL CLARK, JR."
 STANDARD OF REVIEW
In C. E. Morris Co. v. Foley Construction Co. (1978), 54 Ohio St.2d 279,280, the Ohio Supreme Court discussed the standard of review for a civil case regarding manifest weight of the evidence, stating, "Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence."
 LAW AND ANALYSIS
Ohio adopted the Uniform Fiduciary Act and it is codified under R.C. 1339.03 through 1339.13. See Master Chemical Corp. v.Inkrott (1990), 55 Ohio St.3d 23, 26. Furthermore, this court is unable to find any authority demonstrating that the Uniform Fiduciary Act, as adopted in Ohio, has been amended or abolished. R.C. 1339.08 describes when a bank may be liable for paying the funds of a principal to the fiduciary, stating:
 "1339.08 Deposit in name of fiduciary as such; liability of bank
 If a deposit is made in a bank to the credit of a fiduciary as such, the bank may pay the amount of the deposit or any part thereof upon the check of the fiduciary, signed with the name in which such deposit is entered, without being liable to the principal, unless the bank pays the check with actual knowledge that the fiduciary is committing a breach of his obligation as fiduciary in drawing the check or with knowledge of such facts that its action in paying the check amounts to bad faith."
It is noted that R.C. 1339.08 does not in itself provide for the collection of assets from a depository bank if it is found to have acted in bad faith, or with actual knowledge of a breach of fiduciary duty. However, the probate court has a responsibility to protect the estate of a ward. In re Guardianship of Jadwisiak
(1992), 64 Ohio St.3d 176, 181. Furthermore, appellees brought a complaint against National City Bank and Ms. Dendy for concealment and embezzlement of Clark's funds. Therefore, based upon the responsibility of the probate court and the complaint brought by appellees, the probate court could enter judgment requiring National City Bank to pay for the loss to Clark's estate for which it was found to be liable.
Moreover, while R.C. 1339.08 does not provide for the collection of assets, it must nonetheless be viewed to determine whether National City Bank was entitled to the general defense of non-liability. R.C. 1339.08 provides a depository bank with a general defense of non-liability for amounts paid to a fiduciary. However, if a depository bank is found to have acted with actual knowledge of the breach of a fiduciary duty, or if it is found to have acted in bad faith, then it is not entitled to the defense of non-liability.
In Master, supra at 28, the Ohio Supreme Court defined "actual knowledge" and "bad faith," stating:
 "`Actual knowledge' has been defined as awareness at the moment of the transaction that the fiduciary is defrauding the principal. `It means express factual information that the funds are being used for private purposes in violation of fiduciary relationship.' * * *.
 `Bad faith' is not defined by the Ohio Uniform Fiduciary Act or the Uniform Commercial Code. `Good faith' is defined in R.C. 1339.03(E) as `an act when it is in fact done honestly.' This is virtually identical to the UCC 1-201(19) definition of `good faith': `Honest in fact in the conduct or transaction concerned.' `In determining whether the bank acted with bad faith, `courts have asked whether it was `commercially' unjustifiable for the payee to disregard and refuse to learn facts readily available.' * * *. 'The facts and circumstances must be so cogent and obvious that to remain passive would amount to a deliberate desire to evade knowledge because of a belief or fear that inquiry would disclose a defect in the transaction.' * * *. `Bad faith' has also been defined as `that which imports a dishonest purpose and implies wrongdoing or some motive of self-interest.' * * *." (Emphasis added). (Additional citations omitted).
 NATIONAL CITY BANK
National City Bank argues that the trial court's finding was against the manifest weight of the evidence because appellees did not present evidence demonstrating that it had actual knowledge of Ms. Dendy's breach.
Appellees argue that National City Bank acted in bad faith. They contend that National City Bank remained passive about discovering the probate court's judgment entry ordering the funds to be deposited in Mahoning National Bank and court approval prior to the withdrawal of funds.
It is clear from the record that National City Bank failed to obtain the probate court's judgment entry. Moreover, we note that National City Bank's own procedure for opening a guardianship account required presentation of both a certified court appointment naming the guardian and the court order for the transfer of assets in the name of the ward to the guardian. The bank procedures also indicated that these are two separate documents. National City Bank was presented with a court order for the transfer of assets in the name of the ward to the guardian, but it was presented with neither a certified court appointment nor the probate court's judgment entry. Therefore, National City Bank failed to follow its own procedures in opening the guardianship account. This amounted to negligence. It did not, however, rise to the level of bad faith. The record is devoid of evidence indicating that National City Bank deliberately "evad[ed] knowledge because of a belief or fear that inquiry would disclose a defect in the transaction." Master, supra at 28. In fact, Marybeth Phillips testified that she believed all she needed to open the guardianship account was proof that Ms. Dendy was the guardian of Darrell Clark. (Tr. 191). This was satisfied when she received the court order. She claimed that she had no idea that Ms. Dendy would use the money for her own benefit. (Tr. 194). She testified that Ms. Dendy explained that the $5,500 taken as cash was going to be used to build a room for Darrell. (Tr. 195).
Moreover, the Uniform Fiduciaries Act was adopted under a logical recognition by the Ohio General Assembly that it would be unduly burdensome and redundant to require a bank to question the legitimacy of every check and/or withdrawal from a fiduciary account. "The Uniform Fiduciaries Act was developed to facilitate commercial transactions, by relieving those who deal with authorized fiduciaries from the duty of ensuring that entrusted funds are properly utilized for the benefit of the principal by the fiduciary." Master, supra at 26. A bank does not have to inquire about the restrictions which may have been placed on a guardianship account. Cincinnati Ins. Co. v. Citizens Home Savings
(1985), 22 Ohio App.3d 40, 42. Nor does a bank have to control or restrict a guardianship account, even when the bank was given letters of guardianship. Rinehart v. Bank One, Columbus, N.A.
(1998), 125 Ohio App.3d 719, 721. Although National City Bank was negligent in failing to follow its own procedures, it does not necessarily follow that they acted in bad faith in allowing Ms. Dendy to withdraw money from the guardianship account. Since we do not find support in the record for such a conclusion, we must hold that National City Bank is not liable to appellees for the funds withdrawn by Ms. Dendy.
National City Bank's first assignment of error is found to be with merit.
 MS. DENDY
Ms. Dendy similarly argues that the trial court's imposition of liability upon her was against the manifest weight of the evidence. Ms. Dendy argues that National City Bank was a fiduciary and as such owed her and Clark's estate a duty to make full disclosures. Ms. Dendy alleges that National City Bank handles guardianship accounts on a daily basis, and that the bank should have advised her of the limitations which might have existed on the guardianship account. Ms. Dendy also argues that National City Bank should have requested the guardianship papers. Ms. Dendy maintains that National City Bank's failure to advise her resulted in the loss to Clark's estate, and did not support the trial court's finding that Ms. Dendy was liable.
The record established that the trial court's imposition of liability upon Ms. Dendy was not against the manifest weight of the evidence. Ms. Dendy signed both a fiduciary acceptance and an oath of guardian, wherein she swore to protect the ward's interests and expend funds only upon the written approval of the court. Ms. Dendy also had her own legal counsel who discussed her duties with her. (Tr. 232). Despite this knowledge, Ms. Dendy co-mingled the funds in the guardianship account with her own. Ms. Dendy also stated that upon receiving the money, she felt that her family would never want for anything again, and that the account was a family account. (Tr. 53, 110). Finally, Ms. Dendy spent approximately $46,600 from the guardianship account in approximately nine months. (Tr. 109). Given this evidence, the trial court's judgment finding Ms. Dendy liable was supported by competent, credible evidence and was not against the manifest weight of the evidence. C. E. Morris, supra.
Ms. Dendy's first assignment of error is found to be without merit.
 NATIONAL CITY BANK AND MS. DENDY'S SECOND ASSIGNMENT OF ERROR
Because the second assignments of error of both National City Bank and Ms. Dendy have a common basis in law and fact, they will be discussed together and respectively allege:
 "THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT NATIONAL CITY BY FAILING TO CREDIT AMOUNTS EXPENDED FOR THE BENEFIT OF THE WARD."
 "THE PROBATE COURT ERRED WHEN IT FOUND APPELLANT ANNETTE DENDY JOINTLY AND SEVERALLY LIABLE FOR THE TOTAL AMOUNT OF MONEY DEPLETED FROM THE WARD'S ESTATE WITHOUT OFFSETTING ANY AMOUNTS ACTUALLY SPENT TO BENEFIT THE WARD AS PERMITTED BY R.C. §§ 2111.13 AND WITHOUT OFFSETTING THE AMOUNT WHICH REMAINED IN THE WARD'S ACCOUNT."
The trial court found both National City Bank and Ms. Dendy jointly and severally liable for the full $47,500, plus interest and the ten percent statutory penalty. They argue that the trial court improperly awarded this amount without first finding whether any of the expenses benefitted Clark, thereby entitling them to a set-off.
 NATIONAL CITY BANK
In National City Bank's first assignment of error, we determined that it was not liable to appellees. Therefore, National City Bank's second assignment of error is rendered moot.
 MS. DENDY
The duties of a guardian include maintenance, support and education of the ward. Whether expenses are necessary or beneficial to the ward's interest is within the discretion of the trial court, and is reviewed on an abuse of discretion basis. SeeBrown v. Haffey (1994), 96 Ohio App.3d 724, 730. An abuse of discretion connotes more than an error of law or judgment; it implies that the trial court's attitude was unreasonable, arbitrary or unconscionable. Tracy v. Merrill-Dow Pharmaceuticals,Inc. (1991), 58 Ohio St.3d 147, 152.
In the case at bar, the trial court held that none of the funds which were used to pay expenses were for Clark's benefit. Ms. Dendy provided the trial court with an accounting setting forth various expenses for which she used the funds from Clark's estate. However, the trial court indicated that this accounting was only an offer and that it did not have to accept the accounting and the expenses as being appropriate. (Tr. 44). At the May 2, 1997, hearing, the trial court heard testimony from Ms. Dendy and Clark wherein they both attempted to explain the expenses incurred. From the evidence presented at this hearing, the trial court had considerable evidence to support a finding that the majority of the expenses did not benefit Clark. First, Clark only resided with Ms. Dendy for approximately two and a half months after receiving the check from the Victims of Crime Fund. (Tr. 115). However, Ms. Dendy continued to spend money from the guardianship account after Clark moved from Ms. Dendy's residence. Second, Ms. Dendy testified that she considered the account a family account, and thought that she could use the funds for the family as a whole. (Tr. 70). In fact, the accounting submitted to the trial court by Ms. Dendy listed many of the expenses as being for the family. Some of the expenses listed in the accounting, such as the expense to send Clark's sister to Chicago, and the security deposit for Clark's sister and grandmother, did not directly or indirectly benefit Clark. It is noted that Ms. Dendy contended that she had Clark's approval to spend the funds for these expenses. However, the very purpose of the guardianship account was to ensure that Clark would not have the power to spend and deplete the funds. This purpose was hindered by Ms. Dendy's granting to Clark the power to spend the funds. Therefore, there was ample evidence to support a finding that many of the expenses did not benefit Clark.
However, the evidence also indicated that Ms. Dendy was entitled to a partial set-off. The accounting submitted by Ms. Dendy indicated that there was $946.19 remaining in the account, and appellees concede this point. Thus, the amount of liability should have been reduced by this amount. Furthermore, the evidence also indicated that two of the expenses benefitted Clark. These expenses included a winter coat for $79.99 and a 1983 Buick Century for $1,000, both of which were bought for Clark. (Tr. 69, 152). Thus, the liability should have also been reduced by $1079.99, which equaled the expenses benefitting Clark. Therefore, considering the amount remaining in the account and the expenses which benefitted Clark, Ms. Dendy was entitled to set-off her liability by $2,026.18.
Applying this set-off to the trial court's judgment entry, the trial court found appellants jointly and severally liable for $50,344. However, as previously stated, National City Bank was not liable, and Ms. Dendy was entitled to set-off $2,026.18. Therefore, her total liability was $48.317.82. Furthermore, the ten percent penalty should have been $4,831.78, based upon this new amount of total liability.
Ms. Dendy's second assignment of error is found to be with merit.
 MS. DENDY'S THIRD ASSIGNMENT OF ERROR
Ms. Dendy's third assignment of error alleges:
 "THE PROBATE COURT ERRED BY DISMISSING APPELLANT DENDY'S CROSS CLAIM AGAINST APPELLANT NATIONAL CITY BANK WITHOUT STATING A REASON FOR SUCH DISMISSAL."
Ms. Dendy contends that the trial court erred when it unilaterally dismissed her cross-claim against National City Bank. Ms. Dendy cites Civ.R. 41(B), which gives a trial court the power to dismiss a suit without a motion for the failure to prosecute a claim or for failure to comply with the civil rules. However, Ms. Dendy argues that under Civ.R. 41(B), the trial court is required to give the non-complying party notice of its intention to dismiss the suit. Ms. Dendy states that the trial court's April 16, 1999, judgment entry dismissed her cross-claim against National City Bank. Ms. Dendy alleges that this dismissal constituted error because the trial court did not first indicate its intention to dismiss the cross-claim.
Civ.R. 54(B) states:
 "(B) Judgment upon multiple claims or involving multiple parties
 When more than one claim for relief is presented in an action whether as a claim, counterclaim, cross-claim, or third-party claim, and whether arising out of the same or separate transactions, or when multiple parties are involved, the court may enter final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay. In the absence of a determination that there is no just reason for delay, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties, shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties." (Emphasis added).
In Jarrett v. Dayton Osteopathic Hosp., Inc. (1985),20 Ohio St.3d 77, 78, the Ohio Supreme Court held that in conforming with Civ.R. 54(B), a trial court must make an expressed determination that there was "no just reason for delay." In the present matter, the trial court expressly dismissed Ms. Dendy's cross-claim against National City Bank and expressly stated that there was "no just reason for delay." Therefore, the trial court complied with Civ.R. 54(B), and did not err in dismissing Ms. Dendy's cross-claim.
Finally, and notwithstanding our favorable disposition of appellant National City Bank as hereinabove set forth, the decision of the trial court on this issue has a firm foundation on common sense. That is, appellant Ms. Dendy was seeking a judgment against appellant National City Bank for the failure of the latter to prevent the misdeeds of the former. We are hard-pressed to find merit in such an argument.
Ms. Dendy's third assignment of error is found to be without merit.
 MS. DENDY'S FOURTH ASSIGNMENT OF ERROR
Ms. Dendy's fourth assignment of error alleges:
 "THE PROBATE COURT ERRED BY PUBLISHING A CONTRADICTORY JUDGMENT ENTRY WHICH FOUND APPELLANT DENDY JOINTLY AND SEVERALLY LIABLE FOR THE ENTIRE AMOUNT CONVEYED AWAY FROM CLARK'S ESTATE WHILE AT THE SAME TIME FINDING APPELLANT DENDY ONLY 25% RESPONSIBLE FOR THE LOSS TO CLARK'S ESTATE."
Ms. Dendy argues that the trial court erred in finding her jointly and severally liable as well as finding that she was only twenty-five percent liable for the damages. Ms. Dendy contends that this judgment entry created confusion because it is unclear whether she is liable for the entire amount of the damages, or whether she is only liable for her twenty-five percent.
Under R.C. 2307.31 as amended by Am.Sub.S.B. No. 350, a tortfeasor who is determined to have contributed fifty percent or less of the negligence, is liable only for the proportionate share of the compensatory damages which represent economic loss. However, Am.Sub.S.B. No. 350 was deemed unconstitutional in Stateex rel. Ohio Academy of Trial Lawyers v. Sheward (1999),86 Ohio St.3d 451. Where damages are caused by the acts of two or more persons and joint and several liability applies, each person may be held liable for damages jointly or severally.Shoemaker v. Crawford (1991), 78 Ohio App.3d 53, 66-67. Furthermore, judgment can be taken against any joint tortfeasor for the entire amount. Id. at 67. R.C. 2307.31 before Am.Sub.S.B. No. 350 provides a right of contribution between two or more tortfeasors, but R.C. 2307.31 (E) states that it does not apply to breaches of trust or other fiduciary obligations. Thus, if National City Bank was liable, appellees could recover the entire amount from either National City Bank or Ms. Dendy. As previously noted, however, National City Bank is not liable for the withdrawals taken from the guardianship account. As such, Ms. Dendy is liable for the entire amount of the judgment.
Therefore, Ms. Dendy's fourth assignment of error is found to be without merit.
For the foregoing reasons, the judgment of the trial court is reversed in part, and the final damage award to appellees is modified according to law and consistent with this court's opinion.
COX, P.J., dissents; see dissenting opinion.
WAITE, J., concurs.