{¶ 83} In granting summary judgment regarding appellants' "good faith" claim, the trial court concluded that appellants failed to present any evidential materials indicating that the Bank had acted commercially unreasonably in deciding not to lend any additional funds for the condominium project. In this writer's view, that conclusion did not fully address this issue based on the record before us. In addition to considering the reasonableness of the Bank's actions, the trial court should have reviewed the evidential materials to determine if the Bank had acted honestly in dealing with appellants after the initial loan agreement had been signed. Because my review of the materials demonstrates that a factual dispute did exist as to the "honesty" issue, I respectfully dissent from the majority's decision to affirm the trial court's judgment on the "good faith" claim.
 {¶ 84} Although Ohio's version of the Uniform Commercial Code contains a number of provisions which set forth "good faith" standards in relation to various transactions, none of these specific provisions are applicable to the general relationship between the parties to a commercial loan transaction. As a result, in considering "good faith" claims pertaining to loan agreements, the courts of this state have followed the general definition of good faith, as delineated in R.C. 1301.01(S). SeeOehrtman v. Third Natl. Bank Trust Co. (1988),61 Ohio App.3d 604; Bank One, Cleveland, N.A. v. Grantham, Inc. (Sept. 30, 1991), 11th Dist. Nos. 90-G-1555 and 90-G-1556, 1991 Ohio App. LEXIS 4722. That statute defines "good faith" as "honesty in fact in the conduct or transaction concerned."
 {¶ 85} Despite the relative simplicity of the foregoing definition, the Supreme Court of Ohio has referred to two separate standards for determining whether a party has acted in accordance with this definition. In Master Chem. Corp. v.Inkrott (1990), 55 Ohio St.3d 23, 28, the court stated that a party has violated the "good faith" requirement of R.C.1301.01(S) when it has not acted in a commercially justifiable manner. However, that court has also indicated that the general concept of "good faith" should be viewed as "`* * * an implied undertaking not to take opportunistic advantage in a way that could not have been contemplated at the time of drafting * * *.'"Ed Schory Sons v. Soc. Natl. Bank (1996), 75 Ohio St.3d 433,443-444, quoting Kham Nate's Shoes No. 2, Inc. v. First Bankof Whiting (C.A. 7, 1990), 908 F.2d 1351, 1357-1358.
 {¶ 86} For whatever reason, neither of the foregoing two standards expressly refers to the "honesty" requirement of1301.01(S). Nevertheless, in light of the fact that each standard is worded in a broad manner, it logically follows that both were intended to encompass any type of dishonest behavior. That is, any concept of good faith in a commercial setting must necessarily include a prohibition against any type of purposefully misleading or deceitful conduct. This aspect of good faith is commonly called the "pure heart/empty head" standard. See First Natl. Bank of Cicero v. Lewco Securities Corp. (C.A. 7, 1988), 860 F.2d 1407.
 {¶ 87} Although I would agree with the majority that the parties' preliminary discussions in the instant action cannot be considered in deciding whether a good faith violation occurred, my review of the trial record still indicates that appellants submitted sufficient evidential materials to create a factual dispute as to whether the Bank's employees purposefully misled them. First, some of the materials tended to show that, when appellants filed their initial written loan application, they stated that the funds would be used to build a total of nineteen units in the condominium complex. In approving this application and then releasing the initial amount of $550,000 to appellants, the Bank never informed them that the initial funds were only intended for the first phase of the project.
 {¶ 88} Second, some of the evidential materials tend to manifest that certain Bank employees were aware that some of the funds were being used for all three phases of the complex. For example, one document showed that an employee of the Bank approved an inspection sheet which indicated that appellants were using the initial funds to construct the foundations for all of the purposed buildings. Similarly, a second document established that a Bank employee approved a supply statement which showed that certain supplies had been used in relation to buildings in both the second and third phases of the project. Finally, an internal Bank document indicated that its officials were aware that the foundations and sewers for all three phases of the project had been completed. These documents could readily be interpreted to establish that, immediately after the execution of the initial loan agreement, the Bank still intended to finance the entire project and were fully aware that the proceeds of the $550,000 loan were not being exclusively used by appellants for "Phase I" of the project.
 {¶ 89} In their "good faith" analysis, the majority essentially concludes that the fact that the Bank gave conflicting reasons for not going forward with the loan is insufficient to establish a lack of good faith, and then reinforces this conclusory comment with the following language: "* * * all of the reasons provided by the Bank could have been valid. They were not mutually exclusive." The opposite result of that syllogism is just as valid and tenable, too, in view of the evidential materials included in the record on this issue.
 {¶ 90} If the "conflicting reasons" evidence was the sole material submitted by appellants, I might agree with their analysis. However, when the materials concerning the conflicting reasons are considered in the context of appellants' other materials, the fact that multiple reasons were given to appellants could be interpreted to mean that the Bank was simply attempting to find a logical justification for its decision to try to terminate a "bad" deal.
 {¶ 91} In responding to a summary judgment motion, it is not necessary for the non-moving party to establish that he will ultimately be able to prevail at trial. Instead, it is only necessary for that party to show the existence of a factual dispute. Pursuant to the foregoing analysis, I conclude that appellants were able to satisfy this burden in regard to their "good faith" claim. That is, I would hold that appellants did present adequate evidential materials which, when construed in a manner most favorable to them, would tend to demonstrate that the Bank acted in bad faith through its various actions following its acceptance of appellants' written loan application. Therefore, although I concur in the affirmance of the trial court's decision as to appellants' other claims, I would reverse the granting of summary judgment regarding the "good faith" claim and would remand the matter for further proceedings.