CENLIN TAIWAN LTD., a Taiwan Corporation; Ajico Products Taiwan Corp., a Taiwan Corporation; Sprightly Trading Co. Ltd, a Taiwan Corporation, Plaintiffs–Appellants,

v.

CENTON, LTD., a Washington Corporation, Defendant,

and

The Bank of California, N.A., Defendant–Appellee.

No. 92–35003.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 4, 1993.

Decided Sept. 2, 1993.

As Amended Oct. 13, 1993.

Burton V. McCullough and James D. Hepworth, Los Angeles, CA, for plaintiffs-appellants.

Delbert D. Miller, Roger A. Leishman and Kathleen Brame Lemly, Bogle & Gates, Seattle, WA, for defendant-appellee.

Before WRIGHT, BEEZER and HALL, Circuit Judges.

BEEZER, Circuit Judge:

In this diversity case under Washington law, Cenlin Taiwan Ltd. appeals the district court's summary judgment in favor of the Bank of California ("BankCal"). Cenlin primarily argues BankCal improperly collected payment under letters of credit for which Cenlin had ultimate liability. Cenlin also contends it should have been permitted to amend the complaint to clarify breach of warranty and negligence claims and add a claim for fraud. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

## I

Cenlin arranged to buy fruit from Centon Ltd. for export from Washington to Taiwan. Consistent with many international transactions, this arrangement included letters of credit issued by Cenlin's banks in favor of Centon, the "beneficiary." BankCal had a business relationship with Centon and notified Centon when the credits were issued. BankCal thus served as the "advising bank." Cenlin was the "customer" of the credits, and its banks were the "issuers."

The credits allowed Centon to receive payment for fruit delivered to Cenlin. To draw against the credits, Centon had only to present the credits for payment, together with appropriate documentation of orders, deliveries and the like. As BankCal knew, Centon sometimes used the credits for payment from Cenlin, but generally Cenlin paid by other means.

Through loans to Centon, BankCal received a security interest in the proceeds of the credits. Centon defaulted on those loans and, to partially satisfy its debt to BankCal, authorized BankCal to collect payment under the credits.

BankCal presented the credits for payment in June 1986, not knowing whether Centon had been paid for the orders shown in the supporting documents. Cenlin's banks rejected the supporting documents as not complying with the credits. BankCal, acting on information provided by Centon, modified the documents in an attempt to achieve compliance. Cenlin informed BankCal that it had already paid for the orders. As proof, Cenlin supplied copies of unendorsed checks drawn by parties other than Cenlin and not made payable to Centon. Cenlin does not contest BankCal's assertion that these checks were used to avoid Taiwanese currency restrictions. As shown in the supporting documents, the check amounts covered only a small fraction of the total debt owed by Cenlin.

BankCal eventually received payment under some of the credits, and Cenlin sued BankCal under breach of warranty and negligence theories. After extensive discovery and shortly before trial, BankCal moved for summary judgment. Cenlin sought to restate its warranty and negligence claims and add a claim of fraud. The district court denied leave to amend the complaint and dismissed it with prejudice.

The summary judgment is reviewed *de novo*. *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 629 (9th Cir.1987). Viewing the evidence in the light most favorable to Cenlin, we determine whether any genuine issue of material fact must be tried and whether BankCal is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c); *T.W. Elec. Serv.*, 809 F.2d at 630.

## II

Cenlin contends BankCal breached warranties set forth in Revised Code of

Washington 62A.5–111(1). BankCal made no such warranties.

RCW 62A.5–111(1) describes warranties made by a "beneficiary" of a credit. A "beneficiary" is one who is "entitled under [the credit's] terms to draw or demand payment." RCW 62A.5–103(1)(d). No Washington case disregards the statute's express language to expand this definition in any way. Centon is the only beneficiary of the credits. BankCal is not a beneficiary under Washington law and did not make the relevant warranties.

In arguing BankCal is a beneficiary, Cenlin relies heavily upon *Pubali Bank v. City Nat'l Bank*, 676 F.2d 1326 (9th Cir.1982) ("*Pubali I*"), *later proceeding*, 777 F.2d 1340 (9th Cir.1985) ("*Pubali II*"). These decisions are distinguishable from the present case.

In the *Pubali* cases, the advising bank collected on credits through knowingly false statements and used the proceeds to pay itself. *Pubali I*, 676 F.2d at 1330. This "fraud in the transaction" presumably made the bank's actions unlawful regardless of any warranties the bank may have breached. *See Emery–Waterhouse Co. v. Rhode Island Hosp. Trust Nat'l Bank*, 757 F.2d 399, 404–05 (1st Cir.1985). Liability was based, however, upon breach of warranties the bank made as a beneficiary of the credits. Applicable California law defined "beneficiary" the same as current Washington law, and the opinions do not state the bank was "entitled under [the credits'] terms to draw or demand payment." Cal.Com.Code § 5103(1)(d). The bank nevertheless was deemed to have made and breached a beneficiary's warranties because the bank acted "in its own self-interest" in collecting payment under the credit. *Pubali II*, 777 F.2d at 1343–44; *Pubali I*, 676 F.2d at 1329.

Besides lacking a statutory foundation, the *Pubali* warranty rationale sweeps far too broadly. An advising bank generally serves its self-interest by assisting the beneficiary in obtaining payment under a credit. For example, if the bank succeeds in obtaining payment, the beneficiary might be more likely to pay any debt owed to the bank and might provide the bank more business. Nothing requires that a bank serving its self-interest

in these and similar ways be deemed to have warranted to "all interested parties that the necessary conditions of the credit have been complied with." *See* RCW 62A.5–111(1). The district court properly ruled that Washington would not deem BankCal to have made a beneficiary's warranties.

### III

■ Cenlin contends issues of fact prevent summary judgment on whether BankCal breached warranties referenced in RCW 62A.5–111(2). BankCal is entitled to summary judgment on this issue as a matter of law.

By presenting the credits for payment, BankCal warranted to the "payor bank or other payor" that, among other things, BankCal was authorized to obtain payment. RCW 62A.4–207(1). Cenlin maintains that, as the party with ultimate liability on the credits, it is an "other payor" protected by these presentment warranties.

Neither party cites any Washington authority on the scope of the term "other payor," and other jurisdictions are split on whether a drawer of a check, like a customer of a credit, receives presentment warranties. *Compare Sun 'n Sand, Inc. v. United California Bank*, 21 Cal.3d 671, 148 Cal.Rptr. 329, 337, 582 P.2d 920, 928 (1978) (presentment warranties extend to drawer of check) *with Horovitz v. Roadworks of Great Neck, Inc.*, 76 N.Y.2d 975, 563 N.Y.S.2d 735, 736, 565 N.E.2d 484, 485 (1990) (drawer of check does not receive presentment warranties) *and G.F.D. Enters., Inc. v. Nye*, 37 Ohio St.3d 205, 525 N.E.2d 10, 20 (1988) (same). Commentators have sharply criticized the *Sun 'n Sand* position; moreover, a revised section of the Uniform Commercial Code on presentment warranties explicitly rejects it. *See* 1 White & Summers, *Uniform Commercial Code*, § 15–9, at 776 (3rd ed. 1988) ("most unlikely" that *Sun 'n Sand* result comports with drafters' intentions); 5 Hawkland, Leary & Alderman, *Uniform Commercial Code Series*, § 4–207:05, at 442–43 (1984) (*Sun 'n Sand* result should be viewed as an "aberration[ ]"); revised U.C.C. § 3–417, offi-

cial comment 2 (*Sun 'n Sand* result "rejected").

Those disagreeing with *Sun 'n Sand* believe the drafters of the Code intended that the customer of a credit sue his issuing bank for improper payment. Those parties have an established relationship, and the issuing bank is in the better position to assert any defense. *See G.F.D. Enters.*, 525 N.E.2d at 20; 1 White & Summers, *supra*, at 776–77. The district court correctly concluded that Washington courts would consider *Sun 'n Sand* aberrational and would not extend to Cenlin any presentment warranties made by BankCal under RCW 62A.4–207(1).

Cenlin also argues BankCal breached a warranty of its "good faith and authority" in delivering documents. RCW 62A.7–508. The Code does not directly specify to whom this warranty extends, and neither party cites any case law on the issue. In a related section, however, the Code provides that warranties broader than the "good faith and authority" warranty extend only to the transferor's immediate purchaser. RCW 62A.7–507. We agree with the district court that Washington would hold that any warranty made by BankCal under RCW 62A.7–508 extends only to BankCal's immediate purchasers, Cenlin's banks, and not to Cenlin.

### IV

■ Cenlin contends BankCal was negligent in modifying the supporting documents and in not investigating whether Cenlin had already paid the amounts shown in those documents. BankCal owed Cenlin no duty of reasonable care in these matters.

The district court properly decided that Washington would not create a duty of reasonable care owed by BankCal to Cenlin. Any risk of loss on the credits was completely within Cenlin's control. If Cenlin had been concerned that Centon might seek double payment, Cenlin could have insisted on using "stand-by" credits, which require evidence of default before payment can be obtained. Instead, the credits were payable simply upon presentation with appropriate documentation showing the amounts owed. Without knowledge or reason to know of facts to the contrary, BankCal could rely upon information supplied by Centon to achieve conforming documents. Cenlin's "evidence" of prior payment covered only a tiny portion of the amount owed, and the unendorsed checks were not made payable to Centon. Before obtaining payment under the credits, BankCal had no duty to unravel complicated and possibly fraudulent transactions and satisfy itself that Cenlin had not already paid. *See Youngblood v. Schireman*, 53 Wash.App. 95, 765 P.2d 1312, 1314–17 (1988).

### V

Cenlin contends the district court should have permitted it to amend the complaint to accomplish the following: (1) to state explicitly a breach of warranty claim under RCW 62A.5–111(1), (2) to clarify that its negligence claim concerned BankCal's modification of documents and BankCal's failure to investigate Cenlin's assertions of prior payment and (3) to add a fraud claim. The district court did not abuse its discretion. *Texaco, Inc. v. Ponsoldt*, 939 F.2d 794, 798 (9th Cir.1991).

As a matter of law, BankCal is entitled to summary judgment on Cenlin's full statements of the breach of warranty and negligence claims. The proposed amendments were futile and properly denied. *Id.*

The district court also properly rejected the attempt to add a fraud claim. Cenlin has shown no evidence of fraud and offers no explanation as to why it waited until just before trial to shift its theory of liability. If a fraud claim had been added, BankCal would have suffered at least the prejudice of having to alter its defense on short notice and for no adequate reason. *Id.* at 798–99.

AFFIRMED.