**FIFTH THIRD BANK OF TOLEDO, N.A.; Gerald B. Strasbourg, Plaintiffs–Appellees,**

v.

**Dieter DZIERSK, Defendant,**

**National Bank of Royal Oak, Defendant–Appellant.**

No. 92–3821.

United States Court of Appeals, Sixth Circuit.

Argued May 3, 1993.

Decided Dec. 22, 1993.

Barry F. Hudgin (argued and briefed), Schnorf, Schnorf & Ballard and Raymond L. Beebe, Hatcher, Diller, Rice & Beebe, Toledo, OH, for plaintiffs-appellees.

Gerald L. Mills (argued and briefed), Herschel, Accettola, Bloom & Associates and Barry E. Savage (briefed), Savage, Jordan, Giha & Ballard, Toledo, OH, for defendant-appellant.

Before: MARTIN and BOGGS, Circuit Judges.

BOYCE F. MARTIN, Jr., Circuit Judge.

National Bank of Royal Oak appeals summary judgment in favor of Fifth Third Bank of Toledo. This diversity action originated when Fifth Third encountered problems with a $100,000 loan that it made to two individuals. Fifth Third filed a claim seeking repayment from Royal Oak, where the debtors deposited the loan proceeds. Fifth Third claims that Royal Oak breached its warranty of good title, issued pursuant to Ohio Revised Code § 1304.13 (U.C.C. § 4–207), by accepting the deposit of a $100,000 cashier's check even though the cashier's check lacked the endorsement of one of two named payees. The district court awarded the Fifth Third Bank attorney's fees in addition to the face value of the check. Royal Oak contends that the district court erred in ruling that Royal Oak could not avail itself of a contributory negligence defense based on Ohio Revised Code § 1303.42 (U.C.C. § 3–406). For the following reasons, we reverse the grant of summary judgment and remand the case for further proceedings.

## I.

In 1988, Gerald Strasbourg and Dieter Dziersk discussed the possibility that Strasbourg would purchase an interest in two of Dziersk's business concerns, Masonic Investment Company and Michigan Parts and Sales. Masonic Investment Company is a Michigan corporation that succeeded in 1983 to the assets of a general partnership of the same name. Dziersk was the president of Masonic, but there were other stockholders. After several meetings, the First National Bank of Toledo, as predecessor of Fifth Third, issued Strasbourg a $100,000 loan in order to enable Strasbourg to purchase an interest in Masonic. The loan was secured by a mortgage on two buildings owned by Masonic and an assignment of rents inuring to Masonic as owner of the two mortgaged buildings. The loan was documented by a promissory note signed by Strasbourg and a personal guarantee signed by Dziersk. On December 2, 1988, Fifth Third issued the $100,000 loan proceeds in the form of a cashier's check payable to "Gerald B. Strasbourg & Masonic Investment Co."

On December 6, Strasbourg and Dziersk opened a checking account at the National Bank of Royal Oak with the loan proceeds from Fifth Third. The cashier's check was endorsed simply "Gerald B. Strasbourg" on one line and "Dieter Dziersk" on another line. There was no mention of Masonic in the endorsement. Thomas Clement, the Royal Oak branch manager, accepted the proceeds of the check for deposit in a newly-opened corporate checking account in the name of Masonic Investment Company. Under established procedures at Royal Oak, a bank employee should request and receive a corporate taxpayer identification number, a copy of the Articles of Incorporation, and a corporate resolution before opening a corporate account. However, when the account was opened, Clement did not have the company's Articles of Incorporation or a corporate resolution authorizing Dziersk to open the account. Several days later, Clement did receive a corporate resolution that provided authority to Dziersk, but the resolution was executed by Strasbourg. Even though Strasbourg had no position as an officer of

Masonic, he indicated on the corporate resolution that he was the company's secretary.

By June 3, 1989, all funds in the account were depleted. The money was not used for the purposes for which Fifth Third issued the loan to Strasbourg, but was instead used to pay various creditors of other companies in which Dziersk had other interests. In 1989, some other shareholders of Masonic Investment discovered that Dziersk had purported to encumber property owned by Masonic Investment as collateral for Fifth Third's loan to Strasbourg. After the other shareholders became aware of the situation while negotiating with Macomb County Bank for refinancing, Macomb County Bank demanded that Fifth Third release the mortgage on the property or face a slander of title action. Fifth Third subsequently released its mortgage.

On October 24, Fifth Third notified Royal Oak that the cashier's check that Royal Oak had accepted did not contain an authorized endorsement from Masonic Investment, and requested a proper endorsement or a refund for the full amount of $100,000. In response, Royal Oak stated that Dziersk's signature was an authorized signature and refused to supply another endorsement or to refund the $100,000 to Fifth Third.

On December 10, 1990, Fifth Third and Strasbourg filed a complaint against Dziersk and Royal Oak. Fifth Third alleged that Dziersk committed fraud and that by acting as collecting bank, Royal Oak had warranted to Fifth Third that the endorsements were authorized under the warranty provisions of Ohio Revised Code 1304.13 (U.C.C. § 4–207). On March 2, 1992, the district court granted default judgment in favor of Strasbourg and Fifth Third on their claims against Dziersk. The original complaint was amended so that Strasbourg did not make any claims against Royal Oak.

Fifth Third subsequently moved for summary judgment against Royal Oak for the $100,000 face value of the cashier's check, plus finance charges and expenses. Royal Oak responded that it could not be liable under Ohio Revised Code § 1304.13 because Fifth Third contributed to the loss by negligently clothing Dziersk with apparent au-

thority to endorse the cashier's check. The district court determined that Fifth Third was both the drawer and payor bank because the transaction involved a cashier's check. The district court held that Fifth Third, in its capacity as payor bank, was entitled to the amount of the cashier's check because Royal Oak, the depositary bank, breached its warranties under Ohio Revised Code § 1304.13. The district court found that Royal Oak breached its warranty of good title because Dziersk was not an authorized signatory for Masonic, thereby preventing Royal Oak from acquiring good title. After the district court denied Royal Oak's motion for reconsideration, Royal Oak filed a timely notice of appeal.

**II.**

We review the grant of summary judgment de novo. *Brooks v. American Broadcasting Cos.*, 932 F.2d 495, 500 (6th Cir.1991). Under Federal Rule of Civil Procedure 56(c), summary judgment is appropriate if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. The moving party has the burden of showing that there is a lack of evidence that supports the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). In the present case, Fifth Third as the moving party has the burden of negating Royal Oak's argument that Dziersk had actual or apparent authority to endorse the check. Fifth Third has failed to meet this burden.

**A.**

■ The basis of Fifth Third's claim is U.C.C. § 4–207. As adopted in Ohio, section 4–207 reads, in relevant part:

(A) Each customer or collecting bank who obtains payment or acceptance of an item and each prior customer and collecting bank warrants to the payor bank or other payor who in good faith pays or accepts the item that:

(1) he has a good title to the item or is authorized to obtain payment or acceptance on behalf of one who has a good title; and

(2) he has no knowledge that the signature of the maker or drawer is unauthorized, except that this warranty is not given by any customer or collecting bank that is a holder in due course and acts in good faith.....

Ohio Rev.Code § 1304.13

■ In the present case, Royal Oak is the collecting bank, and Fifth Third is the payor bank. The dispute centers around Royal Oak's authority to accept the $100,000 cashier's check for deposit. Royal Oak's authority is dependent upon whether Royal Oak "has good title to the item or is authorized to obtain payment or acceptance on behalf of one who has a good title." Ohio Rev.Code § 1304.13(A)(1). The term "good title" is not defined directly in the Ohio Revised Code or the Uniform Commercial Code, but the term has been interpreted to be a test of the validity of the endorsements. *Fireman's Fund Ins. Co. v. Security Pacific National Bank*, 85 Cal.App.3d 797, 810, 149 Cal.Rptr. 883, 892 (1978). In determining whether the warranty has been broken, the court should ask only whether the paper has all necessary endorsements and whether they are genuine or otherwise effective. *Id.* The Uniform Commercial Code, as adopted in Ohio, defines unauthorized endorsements as those "made without actual, implied, or apparent authority." Ohio Rev.Code § 1301.01 (U.C.C. § 1–201). "[A] collecting bank obtaining payment on a cashier's check bearing a forged endorsement is liable upon its warranty of good title and its guarantee of endorsements to the payor bank." *Valley Bank & Trust Company v. Zions First National Bank*, 656 P.2d 425, 426 (Utah 1982).

■ In evaluating the validity of the endorsements, we are guided by the rationale of *Perini Corp. v. First National Bank*, 553 F.2d 398, 409–10 (5th Cir.1977). The *Perini* approach has already been applied in this circuit in interpreting the Uniform Commercial Code. *See National Credit Union Administration v. Michigan National Bank of Detroit*, 771 F.2d 154, 155 (6th Cir.1985). In *Perini*, several checks with forged drawer's signatures were made payable to "Quisenberry Contracting Co." or "Southern Contract-

ing Co." but were endorsed simply "Jesse D. Quisenberry." *Perini*, 553 F.2d at 409. The *Perini* court held that the endorser's failure to indicate his representative capacity provides no basis for liability under warranty of good title. *Id.* at 415–16. Therefore, Royal Oak cannot be held liable under U.C.C. § 4–207 merely because Dziersk did not indicate his representative authority. It must also be proven that Royal Oak was not a holder in due course and "ha[d] ... knowledge that the signature of the maker or drawer [was] unauthorized[.]" Ohio Rev.Code § 1304.-13(A)(2). Fifth Third failed to meet this burden in its motion for summary judgment.

The U.C.C. defines a holder in due course as one "who takes the instrument (a) for value; and (b) in good faith; and (c) without notice that it is overdue or has been dishonored or of any defense against or claim to it...." Ohio Rev.Code § 1303.31 (U.C.C. § 3–302). To be a holder, a person must be in possession of an instrument which is issued or endorsed to him or his order. U.C.C. § 1–201(20). Because the instrument in this case is payable to Strasbourg and Masonic Investment, the required endorsements are those of Strasbourg and someone authorized by Masonic Investment. *Id.* Therefore, if Dziersk was authorized to endorse the instrument on behalf of Masonic Investment, then the cashier's check was properly negotiated and Royal Oak was a holder.

■ To be a holder in due course, Royal Oak must also have taken the instrument in "good faith" and without notice of any possible defense against it. *G.F.D. Enterprises, Inc. v. Nye*, 37 Ohio St.3d 205, 208, 525 N.E.2d 10, 14 (1988). The Uniform Commercial Code establishes that one is considered to have notice when he has actual knowledge or "has reason to know" based on other information of which he is aware. U.C.C. § 1–201(25). As applied in the present case, the question of whether Royal Oak had notice is a disputed question that is relevant to the determination of whether Royal Oak is a holder in due course and should have the benefit of such status. If it is determined on remand that Royal Oak is not a holder in due course because it had notice, and not for some other reason, then Royal Oak has no defense under Ohio Revised Code § 1304.-13(A)(1) and (A)(2).

**B.**

■ The question of whether Royal Oak is a holder in due course is also relevant to its right to assert a contributory negligence defense under Ohio Revised Code § 1303.42. Royal Oak argues that the district court erred in holding that Fifth Third's alleged negligence was irrelevant to the issue of Royal Oak's liability. We agree with Royal Oak. Section 1303.42 states:

> Any person who by his negligence substantially contributes to a material alteration of the instrument or to the making of an unauthorized signature is precluded from asserting the alteration or lack of authority against a holder in due course or against a drawee or other payor who pays the instrument in good faith and in accordance with the reasonable commercial standards of the drawee's or payor's business.

Ohio Revised Code § 1303.42.

■ This case should be remanded to resolve the factual question of whether Fifth Third negligently contributed to the presence of Dziersk's endorsement by clothing him with apparent authority to endorse the check. Royal Oak's right to assert the negligence defense against Fifth Third is dependent upon Royal Oak being a payor in good faith or a holder in due course in accordance with U.C.C. § 3–302. As stated above, a finding that Royal Oak is not a holder in due course because it had notice would negate its defenses under Ohio Revised Code § 1304.13 and also, on this analysis, under Ohio Revised Code § 1303.42.

**III.**

For the foregoing reasons, we reverse the summary judgment and remand the case so that the district court can determine:

(1) whether Fifth Third negligently contributed to the making of an unauthorized signature by Dziersk, and whether Royal Oak is a holder in due course or good faith payor and is thus able to raise this defense; and

(2) whether Royal Oak has demonstrated compliance with the warranty requirements of Ohio Revised Code § 1304.13 by showing both (a) that it had good title to the check, and (b) one of two facts: either (1) that it had no knowledge that the maker's or drawer's signature was unauthorized, or (2) that it was a holder in due course.