**JURCISIN**

v.

**FIFTH THIRD BANK.**

2006-Ohio-5291.]

Court of Common Pleas of Ohio,
Clermont County.

No. 2004–CVH–1575.

Decided Sept. 5, 2006.

Robert H. Welch III, for plaintiff.

Jeffrey P. Hinebaugh and Robert Zimmerman, for defendant.

———————

ROBERT P. RINGLAND, Judge.

{¶ 1} This matter came before the court on a complaint filed by plaintiff as a result of an alleged wrongful honoring and payment of three forged negotiable checks. Evidence was adduced, closing arguments were presented, and the court took the matter under advisement.

## Factual Background

{¶ 2} It was stipulated by the parties that defendant Fifth Third Bank paid three of plaintiff Nicole Gatch Jurcisin's personal checks over a forged drawer's signature: check No. 001, dated January 17, 2003, forged in the amount of $3,000 and posted on plaintiff's account on January 23, 2003; check No. 002, dated January 23, 2003, forged in the amount of $2,500 and posted on plaintiff's account on January 27, 2003; and check No. 003, dated February 27, 2003, forged in the amount of $4,000 and posted on plaintiff's account on March 5, 2003.

{¶ 3} Plaintiff, who now resides in Kew Gardens, New York, maintained a checking account with Fifth Third, a national banking corporation organized under the laws of the United States and conducting business in Clermont County.

{¶ 4} In September 2002, plaintiff moved to the state of California. In October 2002, plaintiff arranged to rent a room in the apartment of Farris Haile, in Newport Beach, California, and she moved in around November 27, 2002. Plaintiff was introduced to Haile through mutual friends. Plaintiff believed Haile to be a warm and caring person, mother of a young daughter, and employed as a recruiter for a software company, earning $80,000 per year. However, plaintiff knew that Haile's ex-husband had put her into debt and that she was struggling to re-establish her credit.

{¶ 5} Shortly after Christmas of 2002, plaintiff and Haile decided to take a road trip to Mexico. While traveling through Mexico, Haile's vehicle broke down, requiring maintenance and repair parts. Plaintiff and Haile decided that Haile would fly back to California while plaintiff remained in Mexico with the vehicle. Haile would purchase the part required to fix the vehicle in the United States and Fed Ex it to the local mechanic in Mexico.

{¶ 6} Plaintiff purchased the flight ticket back to California for Haile and gave Haile her Fifth Third enhanced Jeanie debit card, but denied giving Haile her

personal identification number or any authority to use the debit card. While plaintiff remained in Mexico, she and Haile agreed that Haile would pay plaintiff's bills and credit cards and that plaintiff would repay Haile for rent and credit card payments when she returned to California. Plaintiff gave Haile permission to open her credit card statement and pay the minimum payment with Haile's own funds.

{¶ 7} In late February 2003, while plaintiff was still in Mexico, Haile decided to move to another apartment. Plaintiff, who was in constant phone and mail contact with Haile, decided to continue to reside with Haile and gave Haile permission to move plaintiff's belongings to the new apartment, including plaintiff's checkbook and statements kept in an unlocked file in plaintiff's bedroom closet.

{¶ 8} Plaintiff did not review any of her bank statements either in print or online while in Mexico. On or about March 4, 2003, plaintiff returned from Mexico and discovered that her checking account was overdrawn and her checkbook was missing. The three checks that were subsequently forged had been blank when stolen.

{¶ 9} On March 5, 2003, plaintiff contacted the Milford, Ohio, Branch of Fifth Third Bank, where a hold was placed on the account. Fifth Third Bank chose not to seek recourse against the depository bank in California or Haile. Plaintiff complied with the responsibility of a bank customer (drawer) to notify the drawee bank of the forgeries, as required by R.C. 1304.35. Additionally, Haile stole from plaintiff various credit cards and checks totaling approximately $50,000. When confronted, Haile admitted to stealing and forging the three checks in question. Fifth Third undertook a full investigation, including an interview with plaintiff, during which plaintiff stated that there were "red flags all over the place" with respect to Haile and that plaintiff "made it so easy for her."

Relevant Legal Principles

{¶ 10} "A person whose failure to exercise ordinary care substantially contributes to an alteration of an instrument or to the making of a forged signature on an instrument is precluded from asserting the alteration or the forgery against a person who, in good faith, pays the instrument or takes it for value or for collection." R.C. 1303.49. "The 'substantially contributes' test is meant to be less stringent than the 'direct and proximate cause' test." R.C. 1303.49, Official Comment 2. "Conduct 'substantially contributes' to a material alteration or forged signature if it is a contributing cause of the alteration or signature and a substantial factor in bringing it about."

{¶ 11} The burden of demonstrating the lack of ordinary care under R.C. 1303.49(A) falls on the person or entity that is asserting the preclusion. *Nesper*

*v. Bank of Am.*, 6th Dist. No. OT–03–012, 2004-Ohio-1660, 2004 WL 628783, ¶ 17. Ordinary care, while not statutorily defined, has been described by Ohio courts as the duty of the customer to perform his or her obligations to the bank with care, skill, reasonable expedience, and faithfulness. Id. at ¶ 18, citing *Shamansky v. Massachusetts Fin. Servs. Co.* (1998), 127 Ohio App.3d 400, 405, 713 N.E.2d 47.

{¶ 12} "If a bank sends or makes available a statement of account or items pursuant to division (A) of this section, the customer must exercise reasonable promptness in examining the statement or the items to determine whether any payment was not authorized because of an alteration of an item or because a purported signature by or on behalf of the customer was not authorized. If, based on the statement or items provided, the customer should reasonably have discovered the unauthorized payment, the customer must promptly notify the bank of the relevant facts." R.C. 1304.35(C).

{¶ 13} The drawee bank may generally pass liability back through the collection chain to the party (i.e., depository bank) that took from the forger and, of course, to the forger himself. *Olympic Title Ins. Co. v. Fifth Third Bank of W. Ohio*, 2d Dist. No. 20145, 2004-Ohio-4795, 2004 WL 2009285.

Legal Analysis

{¶ 14} Plaintiff argues that R.C. 1303.49 embodies a policy that places the risk of loss on the party in the best position to have prevented it. According to plaintiff, Fifth Third was better positioned to prevent the loss because plaintiff was out of the country when the checks were forged and was therefore unaware of the forgery. Plaintiff reasons that because she did not herself release the checks to the forger or to an imposter, R.C. 1303.49 does not apply. Plaintiff cites the Official Comments to the statute as proof for the proposition that it is intended to preclude only claims of bank customers who themselves initiate the fraudulent transaction by releasing their checks "upon a sea of strangers." R.C. 1303.49, Official Comment 1.

{¶ 15} The court agrees with plaintiff's statement of the policy of the statute, but application of it to this case is inconsistent with the Official Comments to the statute. "Th[is] section applies only where the negligence contributes to the alteration. It must afford an opportunity of which advantage is in fact taken." R.C. 1303.49, Official Comment 4 to former R.C. 1303.42. The Official Comments provide an example in which an employer's storage of blank checks and a rubber signature stamp in an unlocked drawer leads to the making of fraudulent checks by an employee. See R.C. 1303.49, Official Comment 3 (case No. 1). In such a case, the employer is precluded from asserting a claim against its bank not because it set the chain in motion by releasing a check upon a sea of strangers but because it failed to adequately secure the checks from the employee.

Plaintiff was similarly negligent in her failure to secure her checks from her roommate.

{¶ 16} This principle has been applied by the Ohio Supreme Court in interpreting the predecessor to R.C. 1303.49. The court held that an employer who negligently supervises an employee who has access to the employer's checks is precluded from asserting the forgery against a payor bank. *G.F.D. Ents., Inc. v. Nye* (1988), 37 Ohio St.3d 205, 212–213, 525 N.E.2d 10. The court found that the employer was negligent because it failed to sufficiently inquire into the employee's background, and because it allowed the checkbook to be in the care of an unsupervised employee. The same can be said of plaintiff's conduct in the case at bar. She failed to adequately investigate her roommate, moving in after knowing Haile only briefly, and left her checkbook in the apartment unattended. Plaintiff's failure to adequately secure and monitor her checks "afford[ed] an opportunity of which advantage [was] in fact taken."

{¶ 17} Plaintiff further argues that her compliance with R.C. 1304.35(C) supersedes R.C. 1303.49, that in essence the statutes conflict and R.C. 1304.35 controls. The court finds this argument unpersuasive.

{¶ 18} Each of the statutes imposes an independent duty upon bank customers, and nothing in either suggests that a customer who discharges one duty is excused from discharging the other. Were this a case in which Fifth Third paid the checks after its customer alerted it to fraudulent activity, the court would be more likely to agree with plaintiff's position. In such a case, the bank would be in a better position to prevent the loss. However, in this case, the payment of the third and final forged check was posted to plaintiff's account on the same day plaintiff reported the forgeries to Fifth Third. Thus, plaintiff was better positioned to prevent her loss. Also, plaintiff's position would lead to the absurd result that no conduct, no matter how reckless or grossly negligent, could result in a bank customer's liability for forged instruments so long as the customer promptly reported the forgery.

## Conclusion

{¶ 19} The court finds that plaintiff failed to exercise ordinary care and that her failure substantially contributed to the forgery. Her claim is therefore precluded by R.C. 1303.49. Judgment and costs in favor of defendant; defendant to prepare entry accordingly.

Judgment for defendant.