[Cite as *Tsepas v. JPMorgan Chase Bank*, 2017-Ohio-1272.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| GEORGE H. TSEPAS | : | JUDGES: |
| | : | Hon. William B. Hoffman, P.J. |
| Plaintiff - Appellant | : | Hon. John W. Wise, J. |
| | : | Hon. Craig R. Baldwin, J. |
| -vs- | : | |
| | : | |
| JPMORGAN CHASE BANK, N.A. | : | Case No. 2016CA00177 |
| | : | |
| Defendant - Appellee | : | O P I N I O N |

CHARACTER OF PROCEEDING:           Appeal from the Stark County Court
                                   of Common Pleas, Case No. 2015
                                   CV 02471

JUDGMENT:                          Affirmed

DATE OF JUDGMENT:                  April 3, 2017

APPEARANCES:

For Plaintiff-Appellant                For Defendant-Appellee

STEVEN A. ARMATAS                      MICHAEL N. UNGAR
7690 Bucknell Circle N.W.              DANIELA PAEZ
North Canton, Ohio  44720              Ulmer & Berne LLP
                                       Skylight Office Tower
                                       1660 West 2nd Street, Suite 1100
                                       Cleveland, Ohio 44113-1448

*Baldwin, J.*

{¶1} Plaintiff-appellant George H. Tsepas appeals from the September 8, 2016 Judgment  Entry of the Stark County Court of Common Pleas granting summary judgment in favor of defendant-appellee JPMorgan Chase Bank, N.A.

STATEMENT OF THE FACTS AND CASE

{¶2} Appellant George H. Tsepas is a customer of appellee JPMorgan Chase Bank, N.A. ("Chase"). On or about February 17, 2012, appellant George H. Tsepas signed a Chase Personal Signature Card for a Chase Plus Savings account ending in 3937. The Signature Card indicated that the account was a joint account and that the co-owners of the account were "George H. Tsepas or Marina G. Tsepas or Angela A. Tsepas." Both Marina and Angela are appellant's daughters. The Signature Card contains signatures for both appellant and Angela A. Tsepas and states that Marina G. Tsepas's signature was on file. By signing the Signature Card, appellant agreed to be bound by "the terms and conditions contained" in the Chase Deposit Account Agreement governing the joint account.

{¶3} The Chase Deposit Account Agreement provides that ownership of an account "is determined by the most current signature card." The Agreement further states, in relevant part, as follows:

When two or more people are listed as owners of a personal account,

the account is a "joint account" and each owner is a "joint owner."…

If one joint owner requests that we do not pay items authorized by a different

joint owner, we may restrict the account and refuse to pay all items

(including items authorized by the owners making the request), but we are

not required to do so.  If we restrict the account, we may not release the restriction unless all joint owners agree in writing to remove it.  No request to restrict the account will affect items that we paid before the request.  If we decide not to restrict the account, all joint owners remain responsible for items subtracted from the account.

Any joint owner may close the account.  We may choose whether or not to act upon other instructions of any joint owners, including adding an additional owner to the account, without the signature of the other joint owners.  We may also pay all or any part of the funds in the account to a court or government agency if we receive a garnishment, levy or similar legal process that identifies any of the joint owners.

{¶4}    Appellant, on April 25, 2013, signed the Safe Deposit Box Contract Card for safe deposit box No. x-xxx-4. By signing the card, appellant agreed to be bound by the agreements and terms contained in the Safe Deposit Box Lease Agreement.  Paragraph 8 of the Safe Deposit Lease Agreement provides, in relevant part,  as follows:

**Liability of Bank**:   The Bank has no knowledge of and exercises no supervision over the box, nor over examination or removal of any of the property at any time contained in said box.  The tenant assumes all risks of injury of loss or damage of any kind (including but not limited to loss or damage due to fire, water, other mishap, robbery or burglary) arising out of the deposit of anything in the box provided the Bank has exercised ordinary care.

{¶5} On February 2, 2015, appellant executed a Power of Attorney ("POA") designating Marina Tsepas as his attorney-in-fact. The POA granted her authorization to have access to and make withdrawals from or deposits in any safe deposit box that appellant had access to and, in paragraph 11, to "enter any safe deposit box which I [appellant] may rent alone or in connection with others, and to place or remove property to or from said box." Appellee Chase, in accordance with the same, added Marina Tsepas as POA to appellant's safe deposit box.

{¶6} On November 25, 2015, appellant filed a verified complaint against appellee Chase, asserting claims for breach of fiduciary duty, violations of the Ohio Uniform Fiduciaries Act and replevin. Appellant, in his complaint, alleged that, on or about January 26, 2015, his daughters, without his knowledge, withdrew $200,000.00 from the savings account ending in 3937 and transferred the money into two new checking accounts, one in the name of Angela A. Tsepas and the other in the name of Marina G. Tsepas. Appellant also alleged that, on or about February 3, 2015, his daughter Marina accessed his safe deposit box, which he believed might have contained $90,000.00, and that she may have transferred the contents of such box into a new safe deposit box opened solely in her own name. In his complaint, appellant also alleged that he executed a Revocation of the POA on June 4, 2015 and visited the bank on the same day with his attorney and presented an executed and notarized copy of the POA Revocation to Jeanne Volz, appellee's agent, who urged him not to effectuate the POA Revocation. Appellant alleged that he listened to Volz and that, on June 8, 2015, Marina Tsepas withdrew money from the account that she had opened in her own name.

{¶7} On May 13, 2016, appellee filed a Motion for Summary Judgment. Appellant, on June 13, 2016, filed a memorandum in opposition to appellee's motion and, on June 15, 2016, filed a Motion for Summary Judgment regarding possession of the contents of the original safe deposit box. Appellee, on June 28, 2016, filed a reply brief in support of its Motion for Summary Judgment. Appellant, on July 1, 2016, filed a Motion for Summary Judgment regarding ownership of the funds deposited in the original savings account. Appellee, on July 8, 2016, filed a memorandum in opposition to appellant's Motion for Summary Judgment regarding the contents of the safe deposit box and appellant filed a reply to the same on July 13, 2016.

{¶8} Appellee, on July 14, 2016, filed a memorandum in opposition to appellant's Motion for Summary Judgment and appellee, on July 27, 2016, filed a reply to the same. Subsequently, on September 2, 2016, appellant filed a motion seeking leave to file a surreply brief in opposition to appellee's reply brief in support of its Motion for Summary Judgment.

{¶9} As memorialized in a Judgment Entry filed on September 8, 2016, the trial court granted appellee's Motion for Summary Judgment and denied appellant's two Motions for Summary Judgment.

{¶10} Appellant now appeals from the trial court's September 8, 2016 Judgment Entry, raising the following assignments of error on appeal:

{¶11} THE TRIAL COURT COMMITTED ERROR AND ABUSED ITS DISCRETION BY FAILING TO CONSIDER PLAINTIFF'S SURREPLY BRIEF PRIOR TO RENDERING SUMMARY JUDGMENT IN FAVOR OF DEFENDANT.

**{¶12}** THE TRIAL COURT ERRED IN DISMISSING PLAINTIFF'S BREACH OF FIDUCIARY DUTY CLAIM (COUNT ONE OF THE COMPLAINT) AGAINST DEFENDANT CHASE.

**{¶13}** THE TRIAL COURT ERRED WHEN IT FOUND A JOINT SAVINGS ACCOUNT HAD BEEN CREATED BY AND BETWEEN GEORGE, MARINA AND ANGELA TSEPAS.

**{¶14}** THE TRIAL COURT ERRED IN FINDING MARINA TSEPAS WAS LEGALLY ENTITLED TO REMOVE AND TRANSFER THE CONTENTS OF THE ORIGINAL SDB INTO HER OWN NAME.

I

**{¶15}** Appellant, in his first assignment of error, argues that the trial court abused its discretion in not considering his surreply brief before ruling on appellee's Motion for Summary Judgment.

**{¶16}** We review a trial court's decision to grant or deny a surreply for an abuse of discretion. *First Fin. Servs., Inc. v. Cross Tabernacle Deliverance Church, Inc.,* 10th Dist. No. 06AP–404, 2007–Ohio–4274, ¶ 39. An abuse of discretion implies that a trial court was unreasonable, arbitrary or unconscionable in its judgment. *Blakemore v. Blakemore,* 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

**{¶17}** In the case sub judice, appellee filed a Motion for Summary Judgment on May 13, 2016. After appellant filed a memorandum in opposition to the same on June 13, 2016, appellee filed a reply brief on June 28, 2016.  On September 2, 2016, which was over two months after appellee filed a reply brief, appellant filed a motion for leave to file a surreply brief. Appellant, in his motion, argued that appellee, for the first time, argued in

its reply brief that appellant in order to survive summary judgment, had to offer more than "bare, unsupported assertions contained within a self-serving affidavit…"

**{¶18}** We find that the trial court did not abuse its discretion because the trial court's decision was not arbitrary, unconscionable or unreasonable. Appellant, as is stated above, filed his motion more than two months after appellee filed its reply brief. Moreover, we find that appellee did not make a new argument in its reply brief, but merely responded to appellant's memorandum in opposition to appellee's Motion for Summary Judgment.

**{¶19}** Based on the foregoing, appellant's first assignment of error is overruled.

II

**{¶20}** Appellant, in his second assignment of error, contends that the trial court erred in granting summary judgment on his breach of fiduciary duty claim against appellee.

**{¶21}** Civil Rule 56(C) states, in pertinent part, as follows:

Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party

against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed mostly strongly in the party's favor. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages.

{¶22} A trial court should not enter a summary judgment if it appears a material fact is genuinely disputed, nor if, construing the allegations most favorably towards the non-moving party, reasonable minds could draw different conclusions from the undisputed facts. *Hounshell v. Am. States Ins. Co.,* 67 Ohio St.2d 427, 424 N.E.2d 311 (1981). When reviewing a trial court's decision to grant summary judgment, an appellate court applies the same standard used by the trial court. *Smiddy v. The Wedding Party, Inc.,* 30 Ohio St.3d 35, 36, 506 N.E.2d 212 (1987). This means we review the matter de novo. *Doe v. Shaffer,* 90 Ohio St.3d 388, 2000–Ohio–186, 738 N.E.2d 1243.

{¶23} The party moving for summary judgment bears the initial burden of informing the trial court of the basis of the motion and identifying the portions of the record which demonstrate the absence of a genuine issue of fact on a material element of the non-moving party's claim. *Drescher v. Burt,* 75 Ohio St.3d 280, 1996–Ohio–107, 662 N.E.2d 264. Once the moving party meets its initial burden, the burden shifts to the nonmoving party to set forth specific facts demonstrating a genuine issue of material fact does exist. *Id.* The non-moving party may not rest upon the allegations and denials in the pleadings, but instead must submit some evidentiary materials showing a genuine dispute over material facts. *Henkle v. Henkle,* 75 Ohio App.3d 732, 600 N.E.2d 791 (12th Dist.1991).

{¶24} At issue is whether or not the trial court erred in granting summary judgment in appellee's favor on appellant's breach of fiduciary duty claim. A "fiduciary relationship" is a relationship in which "special confidence and trust is reposed in the integrity and fidelity of another and there is a resulting position of superiority or influence, acquired by virtue of this special trust." *Ed Schory & Sons, Inc. v. Soc. Natl. Bank,* 75 Ohio St.3d 433, 442, 1996 -Ohio- 194, 662 N.E.2d 1074. Under Ohio law, "a debtor-and-creditor relationship does not generally create a fiduciary relationship." *Groob v. KeyBank,* 108 Ohio St.3d 348, 351, 2006-Ohio-1189, 843 N.E.2d 1170. Therefore, Ohio law does not recognize a fiduciary duty between a bank and its customer absent "special circumstances." *Groob,* 108 Ohio St.3d at 353. In *Umbaugh Pole Bldg. Co. v. Scott*, 58 Ohio St.2d 282, 390 N.E.2d 320 (1979), paragraph one of the syllabus, the Court held, in part that: "A fiduciary relationship may be created out of an informal relationship, but this is done only when both parties understand that a special trust or confidence has been reposed." Moreover, "the offering and giving of advice [is] insufficient to create a fiduciary relationship" even when "the advice [is] given in a congenial atmosphere and in a sincere effort to help" the customer. *Schory*, supra at 442-443.

{¶25} The trial court, in its September 8, 2016 Judgment Entry, found that appellee did not owe appellant a fiduciary duty to appellant at the relevant time. Appellant, in his brief, now maintains that appellee owed him a fiduciary duty because he was a banking customer of appellee's for 10 years, was an immigrant in his 70s with English as a second language, and because Jeanne Volz, his personal banker, "sided" with his two daughters and accepted their explanation of events over his.

**{¶26}** However, as noted by the trial court, "the mere duration of Plaintiff's banking relationship with Chase does not give rise to special circumstances that create a fiduciary relationship." In this case, appellant presented no evidence that a special trust or confidence was reposed or that appellee took on additional responsibilities other than assisting appellant with banking land the cases cited by him are inapposite. In appellant's affidavit, which was attached to his memorandum in opposition to appellee's Motion for Summary Judgment, appellant merely contends that Volz was his customer service representative and personal banker for over ten years and "regularly assisted" him with personal and business banking matters. While appellant, for the first time on appeal, argues that he was owed a duty because of his age and Greek ancestry and allegedly relied on Jeanne Volz for over a decade and sought her guidance, appellant waived such argument by failing to raise it below. See *The Strip Delaware, LLC v. Landry's Restaurants, Inc.,* 5th Dist. Stark No.2010CA00316, 2011–Ohio–4075. Moreover, regardless of appellant's age, appellee did not owe appellant a fiduciary duty simply by virtue of appellant's conducting ordinary banking transactions at appellee's branch.

**{¶27}** In his brief, appellant also asserts that a "potential" fiduciary relationship was created between appellant and appellee on or about June 4, 2015 and that the trial court erred in granting summary judgment in favor of appellee on such basis. According to appellant, on such date, Volz advised him to reconsider his decision to revoke his Power of Attorney. We concur with the trial court that any advice given by Volz to appellant on such date is irrelevant. Appellant, in his complaint, alleged that, on January 26, 2015, his daughters, without his knowledge, withdrew $200,000.00 from the account that they jointly owned with appellant and transferred the money into two new checking

accounts, and that, on or about February 3, 2015, his daughter Marina accessed his safe deposit box and that she may have transferred the contents of such box into a new safe deposit box opened solely in her name. The meeting on June 4, 2015 occurred months after the transactions underlying appellant's claims in his complaint. As noted by the trial court, "[e]ven assuming, *arguendo*, that the advice Ms. Volz gave in the presence of Plaintiff's counsel could create a fiduciary relationship, at the most that relationship would arise from June 4, 2015 going forward."

**{¶28}** Based on the foregoing, we find that a fiduciary relationship did not exist between the parties. We find, therefore, that the trial court did not err in granting summary judgment in favor of appellee on appellant's breach of fiduciary claim.

**{¶29}** Appellant's second assignment of error is, therefore, overruled.

III

**{¶30}** Appellant, in his third assignment of error, argues that the trial court erred in finding that a joint savings account had been created between appellant and his two daughters and that appellee was not liable to appellant for withdrawals made by them from the joint account.

**{¶31}** R.C. 1109.07(A) states as follows:

When a deposit is made in the name of two or more persons, payable to either or the survivor, the bank may pay all of the deposit, any part of the deposit, or any interest earned on the deposit, to either of the named persons, or the guardian of the estate of either of the named persons, whether or not the other person is living. The receipt or acquittance of the

person paid is a sufficient release and discharge of the bank for any payments made from the account to that person.

**{¶32}** Such section "protect[s] banks from liability for having acted on the order of any one joint account holder in a manner that may be inconsistent with the rights that the joint account holders may assert among themselves." *Stewart v. Natl. City Bank,* 7th Dist. No. 98–BA–26, 2001-Ohio-3221, 2001 WL 315191.

**{¶33}** As the court stated in *Citizens Federal Bank, FSB v. Zierolf*, 119 Ohio App.3d 46,  50, 694 N.E.2d 496 (2nd Dist. 1997):

> The statutory language evinces an intent to place the risk of improper conduct by a joint account holder on those who created the joint account and vested the joint account holder with the power to dispose of the money in the account. Thus, when a joint account holder disposes of the money in an account in accordance with the terms of the joint account, the bank is not obligated to inquire into the actual ownership of the funds. Rather, the joint account holders must resolve among themselves any dispute they have as to the particular joint account holder's right to order payment of the funds. The bank's involvement in the transaction is not a consideration.

**{¶34}** In the case sub judice, the most current Signature Card indicated that the account was a joint account and listed the co-owners of the account as "George H. Tsepas or Marina G. Tsepas or Angela A. Tsepas." By signing the Signature Card, appellant agreed to be bound by "the terms and conditions contained" in the Chase Deposit Account Agreement governing the joint account. The Chase Deposit Account Agreement provides that ownership of an account "is determined by the most current

signature card" and further provides that "[w]hen two or more people are *listed* as owners of a personal account, the account is a joint account and each owner is a "joint owner." (Emphasis added). Thus, under the express terms of the Deposit Account Agreement, the account is a "joint account" and appellant and his daughters, who are listed as owners, are "joint owners." While appellant asserts that the account is not a "joint account" because his daughter Marina's signature was listed, on the Signature Card, as "on file" with appellee, "it is not essential to the creation of a joint and survivorship bank account that the codepositor sign a signature card" *Cramer v. Cramer*, 9th Dist. Lorain No. 3238, 1981 WL 2646, 3 (Dec. 16, 1981).

**{¶35}** We find, therefore, that the trial court, therefore, did not err in holding that appellee was not liable for withdrawals made by appellant's two daughters from the joint savings account.

**{¶36}** Appellant's third assignment of error is, therefore, overruled.

IV

**{¶37}** Appellant, in his fourth assignment of error, argues that the trial court erred in finding that Marina Tsepas was legally entitled to remove and transfer the contents of appellant's safe deposit box into her own name.

**{¶38}** Appellant specifically challenges the trial court's entry of judgment in favor of appellee on appellant's claims that appellee violated the Ohio Uniform Fiduciaries Act. Pursuant to R.C. 5815.05, the Uniform Fiduciaries Act ("UFA"), "[a] person who in good faith pays or transfers to a fiduciary any money or other property that the fiduciary as such is authorized to receive is not responsible for the proper application of the money or other property by the fiduciary." In addition, under R.C. 5815.07, "a check is drawn upon the

principal's account by a fiduciary who is empowered to do so, the bank may pay the check without being liable to the principal, unless the bank pays the check with actual knowledge that the fiduciary is committing a breach of the obligation as fiduciary in drawing the check or with knowledge of such facts that its action in paying the check amounts to bad faith."

{¶39} The UFA was developed to "facilitate commercial transactions, by relieving those who deal with authorized fiduciaries from the duty of ensuring that entrusted funds are properly utilized for the benefit of the principal by the fiduciary," and to "place the responsibility of employing honest fiduciaries on the principal." *Master Chem. Corp. v. Inkrott*, 55 Ohio St.3d 23, 26-27, 563 N.E.2d 26, 29-30 (1990). The UFA effectively shields "a bank from liability when the bank knows that the individual is acting for the benefit of another."

{¶40} The first inquiry under the UFA is whether the bank had knowledge of the existence of the fiduciary relationship, and whether the fiduciary in fact possessed the authority to conduct the transaction in question. *Inkrott*, supra at 27. If the bank possesses such knowledge, and the fiduciary in fact possesses such authority, then the UFA will shield the bank from liability—unless the bank had actual knowledge of the fiduciary's breach of his obligations, or alternatively, that the bank had knowledge of such facts that its actions in paying the checks amounted to bad faith. *Inkrott*, 563 N.E.2d at 27. "Actual knowledge" has been defined as awareness at the moment of the transaction that the fiduciary is defrauding the principal. "It means express factual information that the funds are being used for private purposes in violation of fiduciary relati*onship." Inkrott, at* 28*, citing General Ins. Co. of America v. Commerce Bank of St. Charles,* 505 S.W.2d 454, 457 (Mo.App. 1974).

**{¶41}** Appellant contends that appellee had actual knowledge of a breach of fiduciary duty by Marina Tsepas in accessing his safe deposit box and allegedly placing some or all of its contents in a separate safe deposit box opened in her own name. Appellant does not dispute that his daughter had authority to gain access to and remove the contents of his safe deposit box in accordance with his POA , but rather maintains that the language in his POA prohibited his daughter from leasing a safe deposit box in her own name and transferring funds into the same.

**{¶42}** However, there is no evidence that appellee, when it accepted appellant's POA and granted access to Marina to the safe deposit box, had "express factual information that the funds are being used for private purposes in violation of fiduciary relationship." Moreover, while the POA, in paragraph 1, does authorize Marina as appellant's attorney-in-fact to create or open accounts in appellant's name, as noted by the trial court, nothing in such section prohibits her from opening accounts in her own name. We find, therefore, that there is no evidence that appellee had actual knowledge of any alleged breach of fiduciary duty.

**{¶43}** Appellant further asserts that appellee had knowledge of such facts that its actions in amounted to bad faith. The UFA does not define the term "bad faith." Ohio courts have often looked to whether a transaction is "commercially unjustifiable" in order to determine whether a bank acted in bad faith. *Savin v. Central Trust Co., N.A*, 106 Ohio App.3d 465, 470, 666 N.E.2d 332 (1st Dist. 1995), citing *Inkrott,* 55 Ohio St.3d at 27. Accordingly, to be commercially unjustifiable, "[t]he facts and circumstances must be so cogent and obvious that to remain passive would amount to a deliberate desire to evade knowledge because of a belief or fear that inquiry would disclose a defect in the

transaction." *Savin,* 106 Ohio App.3d at 470, 666 N.E.2d 332, quoting *Inkrott,* 55 Ohio St.3d at 27,  citing *Transport Trucking Co. v. First Natl. Bank in Albuquerque*, 61 N.M. 320, 325, 300 P.2d 476 (1956).

**{¶44}** No such facts or circumstances exist in this case. While appellant alleges that appellee has a policy of "permitting fiduciaries to engage in transactions without the Bank's bothering to read or adhere to the written instrument" and that such policy is "commercially unjustifiable", there is no evidence in the record that such a policy exists. Marina Tsepas, was in accordance with the express language in appellant's POA, permitted to "enter any safe deposit box which I [appellant] may rent alone or in connection with others,   and to place or remove property to or from said box."

**{¶45}** Based on the foregoing, we find that the trial court did not err in granting summary judgment in favor of appellee on appellant's claim that appellee violated the UFA.

**{¶46}** Appellant's fourth assignment of error is, therefore, overruled.

**{¶47}** Accordingly, the judgment of the Stark County Court of Common Pleas is affirmed.

By: Baldwin, J.

Hoffman, P.J. and

Wise, J. concur.